569 So.2d 640 (1990)
James PATTERSON, Plaintiff-Appellant,
v.
GNB BATTERY, INC. and Zurich-American Insurance Company, Defendant-Appellees.
No. 21,879-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1990.
Writ Denied January 31, 1991.
*641 Timothy R. Fischer, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Alex S. Lyons, Shreveport, for defendant-appellees.
Before MARVIN and FRED W. JONES, Jr., JJ., and LOWE, J. Pro Tem.
CECIL C. LOWE, Judge Pro Tem.
In this worker's compensation action, the claimant, James Patterson, appeals a judgment rejecting his demands. He contends that he proved a reasonable probability that an accident he sustained caused his disability and that he is entitled to worker's compensation benefits.
The issue is primarily factual. We affirm.

FACTS
Patterson was employed by GNB, Inc. or its predecessors for 19 years. For most of that time, he was a small parts operator accustomed to heavy manual labor. His job required that he keep four molten lead pots full. He loaded as many as 30 to 40 ingots, each weighing 55 to 60 pounds, per shift.
When his employer phased out the small parts operator job, Patterson became a pasting machine off-bearer. This job required Patterson to catch the plates, each weighing about five pounds, as they came off the machine and to break them apart. Patterson testified that he caught 25 to 50 plates at a time.
Patterson suffered from hypertension and was treated by Dr. A.R. Ebrahim for the condition as early as October 1977. The hypertension was discovered while Patterson was hospitalized for bronchitis. Dr. Ebrahim saw Patterson again in October of 1980, when Patterson sought treatment for dizziness and blurred vision. He had discontinued taking his hypertension medication. Dr. Ebrahim treated him with Corgard and his pressure stabilized to within normal limits.
In January 1985, Patterson sought treatment for back pains. Dr. Ebrahim treated Patterson for tenderness over his left paravertebral muscle with medication and referred him to Dr. William Osborne, a pain specialist, for treatment of chronic back *642 pains. Dr. Osborne's therapist first saw Patterson on January 21, 1985 for the first of four treatments with an acuscope, an electronic transcutaneous neurostimulation device designed to treat pain by altering the pain information through electric stimulation. After treatment, Dr. Ebrahim administered another medication and referred Patterson for three additional acuscope treatments, because the pain had subsided but had migrated to the lower back. The last acuscope treatment was on February 12, 1985. Dr. Ebrahim released Patterson to return to work on February 25, 1985.

THE ACCIDENT
Patterson testified in his deposition that the accident occurred on February 9, 1987. By the time of trial, it was apparent that the accident occurred on February 10, 1987, because Patterson was not at work on the 9th.
Patterson was "on loan" to the charge line as a charge line unhooker. This job required a worker to unhook the leads from the batteries as they emerged from a tunnel and to lift them onto a conveyor chain. Earl Brown was training Patterson to replace a worker who was to go on vacation.
Patterson testified that he, Earl Brown and Henry Pierre were working on the charge line at the time of the accident. As he was lifting a battery to the conveyor, he felt a "pop" or "crunch-like slip" in his back. He exclaimed, "I popped my back!" and had to step back from the line, although the injury produced no immediate pain. Because the line did not stop, Earl Brown had to replace him on the line. Henry Pierre later showed him an easier way to pull the batteries. Patterson did not report the incident.

THE LAW
In the recent case of Dunn v. Allen Pulpwood, 565 So.2d 516 (La.App. 2d Cir. 1990), rehearing denied, July 24, 1990, this court had the opportunity to lay out the standards of review applicable in worker's compensation cases where the issues presented are primarily factual.
The standard of review of the trial court's conclusions is under the manifest error-clearly wrong standard. Rosell v. ESCO, 549 So.2d 840 (La.1989); Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987). Great weight is given to the trier of fact's factual conclusions, reasonable evaluations of credibility and reasonable inferences of fact. These will not be disturbed though this court may feel its own evaluations and inferences are equally reasonable. Rosell, supra; Ducote v. J.A. Jones Construction Co., 471 So.2d 704 (La.1985); Cadiere v. West Gibson Products Co., Inc., 364 So.2d 998 (La.1978).
A worker's compensation claimant has the burden of establishing his disability and its causal relation with his employment accident by a preponderance of the evidence. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that fact sought to be proved is more probable than not. In order for the employee to recover, it must be determined that his employment somehow caused or contributed to his disability, but it is not necessary that the exact cause be found. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985).
A claimant's disability is presumed to have resulted from an accident if before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously thereafter manifest themselves, providing either that there is sufficient medical evidence to show there is a reasonable possibility of causal connection between the accident and the disabling condition, Allor v. Belden Corp., 393 So.2d 1233 (La.1981); Lucas v. Ins. Co. of N.A., 342 So.2d 591 (La.1977), or that the nature of the accident, when combined with other facts of the case, raises a natural inference through human experience that such a causal connection exists. Haughton v. Fireman's Fund American Ins. Cos., 355 So.2d 927 (La.1978).
*643 An employee's preexisting disease or infirmity does not disqualify his w.c. claim if the work-related injury either aggravated and accelerated, or combined with, the disease or infirmity to produce the disability for which compensation is claimed. When an employee shows (a) that before the accident he had no manifest disabling symptoms, and (b) that commencing with the accident the disabling symptoms appeared and thereafter continuously manifested themselves, the accidental injury is presumed to have aggravated, accelerated, or combined with the employee's preexisting disease or infirmity to produce his disability if the evidence shows a reasonable possibility of causal connection between the accident and the disabling condition. Walton, Haughton, cited supra.
If the evidence is evenly balanced, or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, the trial court may conclude that the claimant has failed to carry his burden of proof. The trial court may weigh the credibility of a w.c. claimant. Walton, supra; Gonzales v. Babco Farm, Inc., 535 So.2d 822 (La.App. 2d Cir.), writ denied, 536 So.2d 1200 (1988); Loyd v. IMC Fertilizer, Inc., 557 So.2d 1078 (La.App. 2d Cir.), writ denied, 561 So.2d 102 (La.1990).
Once an employee establishes the prerequisites to apply the presumption of causal relationship, the employer has the burden of producing evidence to persuade the trial court that it is more probable than not that the work-injury of which the employee complains did not result from the accident or did not accelerate, aggravate or combine with the preexisting disease or condition to produce the disability. Walton, supra.

THE COURT'S CONCLUSIONS
Citing the lay testimony, specifically that of Brown and Pierre, and the medical testimony, the trial court stated that Patterson's version of the facts was less than credible and concluded that the medical evidence established that Patterson's lumbar problem was a degenerative condition which worsened over time. The totality of the evidence convinced the court that Patterson's condition was caused by events other than an on-the-job accident. We must determine whether the trial court's conclusions are manifestly erroneous, clearly wrong. ESCO, supra.
An examination of the record reveals much conflicting evidence between plaintiff's witnesses and defendant's witnesses. As noted, Patterson testified regarding the circumstances of the accident, but both Brown and Pierre denied his account.
Moreover, the medical evidence of spinal stenosis, Patterson's medical history and the testimony of his doctors provide a credible foundation upon which the trial court, viewing the evidence as a whole, could reject Patterson's testimony regarding the accident. Indeed, there is no other evidence in the record save Patterson's testimony regarding the accident.
Here, Patterson's back symptoms did not commence with or shortly after the accident. He continued to work for one month on loan to the charge line or as a pasting machine offbearer. His complaints, as corroborated by his witnesses, were of dizziness or vertigo for which condition Dr. Ebrahim had previously treated Patterson. This condition was secondary to his hypertension. According to the record, Patterson did not complain of leg pain until March 9, the date of his hospital admission, or later, as testified to by his physician, Dr. Ebrahim. Yet, he had seen Dr. Ebrahim on March 5 and made no such complaint, despite his insistence that he made a complaint of leg pain to the company nurse, company insurance program administrator and his physician. Patterson alternately explains this by claiming that no one would listen to him or that they were mistaken.
In Dunn, supra, the claimant failed to establish that there was a reasonable probability of a causal connection between a work-related accident and his disability. The inconsistency between the initial complaints and eventual diagnosis, the long period between the accident and the onset *644 of symptoms and Dunn's prior medical history convinced this Court that the trial court's judgment was correct.
Similarly, these factors convinced the trial court that there was no causal relationship between an on-the-job accident and Patterson's disability. As noted, there is some doubt that the accident Patterson described actually occurred. Only his testimony and what he told others provides a basis for the conclusion that an accident did occur. The inconsistency in his testimony was weighed by the trial court and, coupled with the lay and medical evidence, formed the basis for its conclusion that Patterson's condition was degenerative. On this record, we cannot say the trial court's conclusions were manifestly erroneous, clearly wrong.

DECREE
Finding that the trial court was reasonable in its conclusions and that the record reveals that Patterson only remotely showed a possibility, but not a reasonable probability, of a causal relationship between an employment-related accident and his disability, we affirm, at appellants' cost.