579 So.2d 1174 (1991)
Frank LUBOM, Plaintiff-Appellant,
v.
L.J. EARNEST, INC. and Transportation Insurance Company, Defendants-Appellees.
No. 22384-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1991.
*1177 Timothy R. Fischer, Margie Gray McMahon, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Alex S. Lyons, Shreveport, for defendants-appellees.
Before SEXTON, VICTORY and STEWART, JJ.
STEWART, Judge.
In this worker's compensation action, the claimant appeals a judgment rejecting his demands. He contends that he suffered disability to his back which should have been found to have been caused by a work-related knee injury. Additionally, claimant sought supplemental earnings benefits, medical expenses, penalties and attorney's fees. For the reasons assigned below, we amend the judgment to include an award of additional medical expenses and otherwise, affirm.

FACTS
During 1987, Frank Lubom operated an eighteen wheel gravel truck for L.J. Earnest, Inc. On Friday, August 28, 1987, Lubom slipped and twisted his left knee as he stepped down from checking the oil and water in the truck. Lubom was initially treated at The Family Clinic by Dr. Scott Mighell and Dr. Charles Henry Nash. Lubom's attorney referred him to Dr. Carl Goodman. During arthroscopic surgery on October 1, 1987, Dr. Goodman debrided an area of deep articular damage under Lubom's left patella. However, he found no evidence of cartilage or ligament damage.
Following Dr. Goodman's recomendation, Lubom reported to Tietjen Physical Therapy Clinic for treatment during October and November 1987. In December 1987, Dr. Goodman assigned Lubom a 15 percent partial disability of the knee. He diagnosed Lubom as having post-operative knee sprain with patella chrondromalacia and released him to return to work, without restriction, after December 28, 1987.
Lubom reported to Samantha Earnest, equal employment opportunity officer and assistant safety officer at L.J. Earnest, in January 1988. She told him that L.J. Earnest had no work for him at that time and placed Lubom on partial unemployment. Lubom applied for and received unemployment compensation benefits beginning that January.
Lubom returned to Dr. Goodman on February 8, 1988 still complaining of knee pain. He visited The Orthopedic Clinic and saw orthopedic surgeon Dr. M. Regan Green on February 12, 1988 for a second opinion regarding his knee. Lubom complained neither of falling nor of back pain during the February 8 and February 12 visits. Dr. Green's initial examination revealed 1 + lateral instability at 30 degrees and a possible trace of medial instability on valgus stressing at 30 degrees. Dr. Green also observed patella-femoral crepitance as well as tenderness over the medial femoral attachment of the medial collateral ligament. Dr. Green's impression was that Lubom had a sprain of the medial collateral ligament and possibly subluxation of the patella along with resultant chrondromalacia of the patella. Dr. Green recommended injection of the sprained area and referred Lubom back to Dr. Goodman for follow-up. Lubom then visited Dr. Goodman on February 16, this time complaining of knee pain and of pain in his buttocks and lower back resulting from a fall "several weeks ago." At that time, Dr. Goodman's impression was that Lubom had post-traumatic patella chrondromalacia, persistent medial collateral ligament sprain of the left knee, and lower back contusion. Dr. Goodman's recommendation was as follows: "I have no further treatment to offer. Consultation from another orthopedic surgeon in town is advised."
Lubom continued treatment with Dr. Green for several weeks. The first time Lubom complained to Dr. Green of back pain following a fall due to his knee "giving out" was in his second visit on February 29, 1988. Dr. Green injected Lubom's femoral medial collateral attachment with Celestone and Xylocaine. Pursuant to Dr. *1178 Green's referral, Lubom reported to Larsen Physical Therapy, Inc. for nine treatments in an attempt to relieve both knee and back pain.
Lubom again saw Samantha Earnest on March 17, 1988. She told him to report to work the following Monday. When he did not do so, she "gave him separation papers," (TR. at 177) effective March 19, 1988. By March 24, 1988, Dr. Green noted that Lubom's knee was improving and that his back had improved. Lubom was then released to return to work on March 24 with the limitation that he operate only automatic transmission vehicles. Dr. Green testified by deposition that the basis for the work restriction was the crepitance as well as Lubom's complaints of continued pain.
Lubom returned to see Dr. Green on April 28, 1988, complaining of recurrent pain in his back and knee. Dr. Green noted the possibility of rearthroscopy, but felt that the knee should improve to the point where no surgery would be required if Lubom exercised conscientiously.
At the request of L.J. Earnest's insurance company, Dr. Gordon Mead examined Lubom on or about June 20, 1988. Dr. Mead's examination produced no objective finding to substantiate Lubom's complaints of pain other than a one-quarter inch difference in the circumference of the thighs, measured five inches above the superior pole of the patella. Lubom made no mention of a back injury to Dr. Mead. Dr. Mead testified by deposition that atrophy of the quadriceps muscle can be indicative of joint pathology, but did not believe that a quarter of an inch was necessarily significant due to built-in error in the method of measuring.
Lubom was treated at LSU Medical Center (LSUMC) from June through September 1988 for back and knee problems. An August 1988 examination at the LSUMC Orthopedic Clinic revealed a 4 cm difference between Lubom's right and left quadriceps, measured 20 cm below the tibial tubercle. Lubom was diagnosed as having chronic left knee pain and was referred for three months of physical therapy to strengthen the quadriceps.
Lubom returned to the Orthopedic Clinic and was examined for back pain by Dr. Harold Bicknell on September 23, 1988 and by Dr. Green on September 30, 1988. There is no mention of knee pain or of a knee examination in The Orthopedic Clinic's September 1988 reports. Lubom also returned to see Dr. Goodman in November 1988 complaining of knee, lower back, and hip pain. His examination of the left knee was within the normal limits.
The trial court rendered judgment in favor of defendants, L.J. Earnest, Inc. and Transportation Insurance Company, and against plaintiff, Frank Lubom, rejecting his demands and dismissing his suit with prejudice at his costs. The judgment further ordered that Mr. Lubom pay expert witness fees and deposition fees. Mr. Lubom appeals assigning as error the following:
1. The trial court erred in finding there was no causal relation between the August 28, 1987 injury and the back injury;
2. the trial court erred in applying the "clear and convincing" standard as the burden of proof of the causal relationship;
3. the trial court erred in denying supplemental earnings benefits;
4. the trial court erred in denying medical expenses after December 28, 1987;
5. the trial court erred by failing to award penalties and attorney's fees to Mr. Lubom under LSA-R.S. 23:1201.2.

LEGAL PRINCIPLES
The claimant in a worker's compensation case has the burden of establishing his disability and its causal relation with the employment accident by a preponderance of the evidence. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985); Gonzales v. Babco Farm, Inc., 535 So.2d 822, writ denied, 536 So.2d 1200 (La.App. 2d Cir.1988). Proof by *1179 a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. In order for the employee to recover, it must be determined that the employment somehow caused or contributed to his disability, but it is not necessary that the exact cause be found. Walton, and Gonzales, cited supra.
A claimant's disability is presumed to have resulted from an accident if before the accident he was in good health, but commencing with the accident the symptoms of the disabling conditions appear and continuously thereafter manifest themselves, providing either that there is sufficient medical evidence to show there is a reasonable possibility of causal connection between the accident and the disabling condition, Allor v. Belden Corporation, 393 So.2d 1233 (La.1981); Lucas v. Ins. Co. of N.A., 342 So.2d 591 (La.1977), or that the nature of the accident, when combined with other facts of the case, raises a natural inference through human experience that such a causal connection exists. Haughton v. Fireman's Fund American Ins. Cos., 355 So.2d 927 (La.1978); Dunn v. Allen Pulpwood, 565 So.2d 516 (La.App. 2d Cir.1990); Patterson v. GNB Battery, Inc., 569 So.2d 640 (La.App. 2d Cir.1990); Walton, and Gonzales, cited supra.
An employee's preexisting disease or infirmity does not disqualify his worker's compensation claim if the work-related injury either aggravated, or combined with, the disease or infirmity to produce the disability for which compensation is claimed. When a claimant proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, a claimant's work injury is presumed to have aggravated, accelerated or combined with any preexisting disease or infirmity to produce his disability. Haughton, Walton, Dunn, and Patterson, cited supra.
The testimony of a worker's compensation claimant alone may be enough to prove a work-related accident if there is no other evidence sufficient to discredit or cast doubt upon the claimant's version of the accident and his testimony is corroborated by circumstances following the accident. Gonzales, supra, and cases cited therein.
Whether the claimant has carried his burden of proof and whether the plaintiff's testimony is credible, are questions of fact to be determined by the trier of fact. The standard of review of the trial court's conclusion is under the manifest error-clearly wrong standard. Patterson, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989). Great weight is given to the trier of fact's factual conclusions, reasonable evaluations of credibility, and reasonable inferences of fact. These will not be disturbed though we may feel our own evaluations and inferences are equally reasonable. Rosell, and Patterson, cited supra.
If the evidence is evenly balanced, or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the claimant fails to carry his burden of proof. The trial court may weigh the credibility of a claimant. Gonzales, Walton, Dunn, and Patterson, cited supra.
Once a claimant establishes the prerequisites to apply the presumption of causal relationship, the employer has the burden of producing evidence to persuade the trial court that it is more probable than not that the work injury of which the employee complains did not result from the accident or did not accelerate, aggravate, or combine with the preexisting disease or condition to produce the disability. Walton, and Patterson, cited supra.

DISCUSSION: DISABILITY AND CAUSATION
Lubom assigns as error the trial court's use of the "clear and convincing" standard *1180 and its finding of no causal relation between the work-related knee injury and the back injury resulting from subsequent falls. In its opinion, the trial court stated that Lubom failed to prove the causal connection between the work injury and the back injury by clear and convincing evidence.[1] The proper standard of proof is preponderance of the evidence. However, appeal or review lies only from the judgment, not the reasons therefor. Hardin v. Munchies Food Store, 510 So.2d 33, modified on other grounds, 521 So.2d 1200 (La. App. 2d Cir.1988).
If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra.
Based upon the instant record, a reasonable trier of fact could conclude that Lubom failed to prove the causal connection by a preponderance of the evidence. Lubom injured his knee in August 1987 and first complained of back pain in February 1988. Lubom's back symptoms did not commence during or shortly after the August accident. For several months after the accident Lubom's repeated complaints to physicians were related only to his knee condition. The trial court did not believe Lubom regarding any relationship between his knee problems and his back problems. There were no independent witnesses to the falls Lubom stated he had when his knee gave out. The trial court has broad discretion in resolving the credibility choices at trial and thus we find no manifest error in the trial court's conclusion that Lubom failed to prove work-related causation of the back injury.

WORKER'S COMPENSATION, MEDICAL EXPENSES, AND SUPPLEMENTAL EARNINGS BENEFITS
We must determine whether Lubom is entitled to additional worker's compensation benefits, medical expenses, and supplemental earnings benefits (SEB) after December 29, 1987 that relate to his knee injury.
Dr. Goodman assigned Lubom a 15 percent permanent partial disability as a result of the knee injury and released him to return to work, without restriction, beginning January 4, 1988. Due to continued complaints of pain, Dr. Green continued to treat Lubom for the knee injury and released him to return to work on March 24, 1988. By March 24, 1988, all physicians who had treated Lubom for his knee injury were in agreement that Lubom could return to work. The employer offered Lubom his old job driving vehicles with spring driven clutches which his primary treating orthopedist Dr. Goodman concluded he could do. Drs. Mead and Joffrion concurred in Dr. Goodman's opinion. Dr. Green felt Lubom could only drive vehicles with an automatic transmission. Dr. Prakasam agreed but for reasons related to the back injury claims. The trial court concluded "that Lubom was able to return to work of some sort after December 28, 1987." This conclusion is not manifestly erroneous. Based on an average weekly wage of $358.19 Lubom was paid $238.80 per week from August 28, 1987 until December 29, 1987. L.J. Earnest, Inc. paid all medical expenses through that date. L.J. Earnest, Inc. relied on Dr. Goodman's report that Lubom could return to work as of December 28, 1987 without restrictions, thus there is no clear error in the trial court's failure to reinstate worker's compensation benefits after that date.
The claimant in an SEB case must prove by a preponderance of evidence that his work-related injury rendered him unable to earn 90 percent of his pre-injury *1181 wages. Barton v. Wausau Ins. Co., 545 So.2d 1248 (La.App. 2d Cir.1989); Duncan v. State, DOTD, 556 So.2d 881 (La.App. 2d Cir.1990). Once the SEB claimant establishes his prima facie case, the burden shifts to the employer to show that the claimant is physically capable of work and that the work was offered or available in the reasonable geographic region. Barton, supra; Williams v. Avondale Indus., Inc., 521 So.2d 491 (La.App. 4th Cir.1988). If the employer meets this burden, then the employee must show by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely as a consequence of substantial pain. LSA-R.S. 23:1221(3)(c)(ii).
Lubom testified that he earned $5.50 hourly with L.J. Earnest, Inc. (TR. at 110) He has not worked since September 1987. Lubom testified that he looked for other work since he left L.J. Earnest, Inc., however, he failed to prove where or when he looked for such other work. He failed to produce evidence showing that the only work available to him paid less than 90 percent of his pre-injury wages.
L.J. Earnest, Inc. produced evidence from Diana Herbst, an expert in vocational rehabilitation, to show that jobs are available for persons who can operate automatic transmission vehicles. The trial court credited her testimony and found that jobs were available to Lubom within the meaning of the Louisiana worker's compensation law. The hourly salary range for these jobs was $5.00 to $7.00 per hour. The trial court found this evidence sufficient to show that Lubom can earn at least 90 percent of his pre-accident wages of $5.50 per hour. Considering the sparse evidence produced on this issue by Lubom, we conclude that the trial court was not clearly wrong in its conclusion that Lubom was not entitled to an award of supplemental earnings benefits.
Lubom has incurred $8,019.25 in unpaid medical expenses as follows:

Dr. Felix K. Prakasam $ 432.00
Dr. Regan Green/Orthopedic Clinic $ 415.00
Larsen Physical Therapy $ 518.00
Dr. Salczenko $1,189.00
Back Pain Chiropractic $4,870.00
Louisiana State University Medical Center $ 495.25
Louisiana State University Medical Center $ 100.00
(Department of Surgery)
 _________
Total Outstanding Bills: $8,019.25

L.J. Earnest is obligated to furnish all necessary medical expenses related to Lubom's knee injury. LSA-R.S. 1203. Although Dr. Goodman released Lubom to begin work in January 1988, Dr. Green continued to treat Lubom's knee after this release. Even though the trial court doubted Lubom's credibility, where there is objective medical evidence to substantiate a claim, the claimant should not be denied relief solely on the basis of credibility. See Loyd v. IMC Fertilizer, Inc., 557 So.2d 1078, writ denied, 561 So.2d 102 (La.App. 2d Cir.1990).
Although there were conflicting medical opinions as to when Lubom could return to work and whether such work should be restricted, Dr. Green did find objective medical evidence to corroborate Lubom's subjective complaints of knee pain. Dr. Green referred Lubom for physical therapy, and finally concluded by March 24, 1988 that there was nothing more he could do for Lubom's knee. Medical records in evidence from LSUMC show that Lubom sought medical attention for his knee as late as September 27, 1988 when he was diagnosed with chronic knee strain. Measurements taken during August 1988 showed a four centimeter difference between the size of Lubom's left and right quadriceps. After obtaining these measurements, doctors at LSU Medical Center Orthopedic Clinic referred Lubom for physical therapy to strengthen his quadriceps. Lubom was in apparent need of medical treatment for his left knee, as corroborated by the medical diagnoses and recommendations, at least through September 1988.
We find the trial court erred in failing to award knee injury-related medical expenses incurred after December 29, 1987. We find the defendants liable for the following medical expenses:

*1182
Dr. Regan Green/Orthopedic Clinic $ 195.00
Larsen Physical Therapy $ 185.00
Louisiana State University Medical Center $ 264.25
 ________
Total: $ 644.25

PENALTIES AND ATTORNEY'S FEES
Lubom also seeks statutory penalties and attorney's fees. Under LSA-R.S. 23:1201 E, penalties are appropriate only if the employer does not have a reasonable basis on which to controvert the claimant's claim to compensation. Attorney's fees require a finding that the employer's actions were arbitrary and capricious or without probable cause under LSA-R.S. 23:1201.2. Whether or not a refusal to pay benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer at the time of its action. Loyd, supra; Hughes v. General Motors Lamp Guide Division, 469 So.2d 369 (La.App. 2d Cir.1985). Penalties are stricti juris and should be imposed only if the facts clearly negate good faith and just cause in connection with the refusal to pay. Guillory v. Travelers Insurance Company, 294 So.2d 215 (La.App.1974); Wall v. Sisters of Charity of the Incarnate Word, 488 So.2d 1032 (La.App. 2d Cir.1986). Trial courts have great discretion in imposing or refusing to impose attorney's fees. Barton, supra.
L.J. Earnest, Inc. relied on the medical opinion of Dr. Goodman that Lubom could return to work without restriction after December 28, 1987. L.J. Earnest was not arbitrary or capricious in controverting Lubom's claim for additional benefits. We affirm the trial court's denial of Lubom's claim for penalties and attorney's fees.

CONCLUSION
For the reasons expressed, the judgment is amended to include an award of knee-related medical expenses totaling $644.25:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Frank Lubom, and against L.J. Earnest, Inc. for medical expenses in the amount of SIX HUNDRED FORTY-FOUR and 25/100 ($644.25) DOLLARS.
The judgment is in all other respects affirmed. Costs of appeal are divided one-half (½) to appellant and one-half (½) to appellee.
AMENDED AND AFFIRMED.
NOTES
[1] Although the trial court used the phrase "clear and convincing evidence" in its opinion, we cannot find from the totality of the opinion that it imposed a stricter burden of proof than preponderance of the evidence. See, Burnes v. Wizard Enterprises, Inc., 543 So.2d 616 (La.App. 2d Cir.1989).