605 So.2d 675 (1992)
Jerry D. KEY, Plaintiff-Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, et al., Defendants-Appellants.
No. 23954-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1992.
*677 William H. Baker, Bobby L. Culpepper, Jonesboro, for plaintiff-appellant.
Hayes, Harkey, Smith, Cascio & Mullens by Francis C. Broussard, Monroe, for defendants-appellants.
Before SEXTON, VICTORY and BROWN, JJ.
BROWN, Judge.
In this worker's compensation action, the plaintiff, Jerry D. Key (Key), appeals a judgment rejecting his demands for continued medical treatment, worker's compensation benefits, penalties and attorney fees. Key's employer, Bruce Allen Timber, and Insurance Company of North America (INA) also appeal the judgment asserting that the plaintiff never suffered an employment related accident. For the reasons assigned below, we affirm.

FACTS
Key was employed by Terry Williams who was a subcontractor of Bruce Allen Timber. Key's employment duties included wood cutting, loading, and other odd jobs associated with the timber industry. Key alleges that on October 23, 1989 he slipped and fell off a truck which he was loading with cut wood and injured his back. Key claimed and was paid worker's compensation benefits by INA who was the insurer for Bruce Allen Timber. Based on an average weekly wage of $175.00, INA paid weekly benefits of $116.73. These benefits were paid until January 12, 1990, when INA determined that Key could return to work.
On June 25,1990, Key instituted proceedings with the Worker's Compensation Administration Board against the defendants alleging that he was entitled to continued worker's compensation benefits, medical treatment, penalties and attorney fees. Following trial, the hearing officer issued a Memorandum Opinion dated July 12, 1991 setting forth the following findings of fact:
1) Key had sustained a work related accident on or about October 23, 1989.
2) Key's average weekly wage was $93.10.
3) Key had experienced prior trauma to his back in a 1977 motorcycle accident which caused his present degenerative disc disease and unequal leg length.
Considering the foregoing facts, the hearing officer held that:
1) By December 12, 1989 Key was able to return to work.
2) Because Bruce Allen Timber and INA had paid weekly compensation of $116.73 through January 12, 1990, Key had been overpaid.
3) All medical treatment after December 12, 1989 was unrelated to the October 23, 1989 accident.
In accordance with these factual findings, the hearing officer ordered:
1) Defendants to pay all medical expenses incurred by plaintiff prior to December 12, 1989.
2) All of plaintiff's other demands be dismissed with full prejudice.
3) The costs of this matter be borne by the party incurring said costs.
Both the plaintiff and defendants appeal the hearing officer's opinion.

STANDARD OF REVIEW
Although the Louisiana Worker's Compensation Act specifically provides for an appeal to this court, it does not set forth the standard of review. Consideration of the history of the Act is appropriate in determining the correct appellate review standard.
Up until 1983, employees who pressed worker's compensation claims in Louisiana were required to file civil suits in district court. Revisions enacted in 1983 changed the worker's compensation claims system by creating an administrative office to handle *678 these claims. This administrative office, called the Office of Worker's Compensation Administration ("OWCA"), primarily processed compensation claims and required injured employees to file their claims initially with the director of the OWCA. In turn, the director would issue a recommendation on resolving the claim. Under the 1983 amendments, these recommendations were advisory in nature and if either party rejected the director's recommendation they retained the right to bring an action de novo in district court. Ross v. Highlands Ins. Co., 590 So.2d 1177, 1180 (La.1991); Devlin, Worker's Compensation and the District Courts: a Jurisdictional Limit on Administrative Adjudication, 51 La.L.Rev. 314 (1990).
In 1988, the Louisiana Legislature once again amended the worker's compensation system. Under the new system, nine hearing officers handle claims at the administrative level. LSA-R.S. 23:1310.3(A)(4). The 1988 amendment abolished de novo review in the district court, replaced it with a direct appeal to the appellate court, and relegated the district courts to the role of enforcing orders of the OWCA. Ross, 590 So.2d at 1180; Devlin, supra p. 314.
In 1990, the Louisiana Supreme Court held the new system, which give the OWCA original jurisdiction over worker's compensation claims, unconstitutional because it contravened the constitutionally mandated original jurisdiction of the district courts. Moore v. Roemer, 567 So.2d 75 (La.1990). This infirmity was subsequently cured through a constitutional amendment to Article V, Section 16(A) which created an exception to district courts' original jurisdiction for worker's compensation matters. Thus, the scheme initially envisioned by the 1988 statutory amendments is now presumed in place. Ross at 1180; Devlin, supra p. 319.
After reviewing the Act, it appears that the legislative and constitutional intent was to make the decision of the hearing officer tantamount to that of a district judge. Thus, we expressly hold that the standard of review to be applied to a worker's compensation case decided by a hearing officer should be the same as the standard applied to a district court decision. See Britton v. Morton Thiokol, Inc., 604 So.2d 130 (La.App.2d Cir.1992).
The standard for reviewing a district court decision is that its finding of facts may not be set aside without first determining that those facts were manifestly in error or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Patterson v. GNB Battery, Inc., 569 So.2d 640, 642 (La.App.2d Cir.1990), writ denied 573 So.2d 1134 (La.1991). Great weight is given to the trier's factual conclusions, reasonable evaluations of credibility and reasonable inferences of fact. These will not be disturbed though this court may feel its own evaluations and inferences are equally reasonable. Patterson, 569 So.2d at 642. The manifest error standard of appellate review applies equally when some of the evidence before the trier of fact includes written reports, records, and depositions. France v. A & M Wood Co., 566 So.2d 106, 110 (La.App.2d Cir.1990). Therefore, the appellate standard of review applicable to worker's compensation hearing officer's findings and judgments is the manifest error-clearly wrong test.

APPELLATE REVIEW OF THIS CASE

A. THE ACCIDENT
The first assignment of error is brought by the defendants, Bruce Allen Timber and INA. Defendants assert that the plaintiff never suffered an employment related accident.
Plaintiff has the burden of proving his claim even though the Louisiana Workers' Compensation Act, LSA-R.S. 23:1021, et seq., is to be construed liberally in favor of the claimant. Bruno v. Harbert International, Inc., 593 So.2d 357, 360 (La.1992); Nelson v. Roadway Exp., Inc., 588 So.2d 350 (La.1991). Thus, the burden is with the plaintiff to demonstrate by a preponderance of the evidence that an employment related accident resulted in disability. Britton, 604 So.2d at 134; Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App.2d Cir.1991). Proof by a preponderance *679 of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Dunn v. Allen Pulpwood, 565 So.2d 516, 520 (La.App.2d Cir.1990).
In this case, the defendants claim that the hearing officer erred in finding that Key suffered an employment related accident. An appellate court may not set aside a hearing officer's findings of fact in absence of manifest error or unless it is clearly wrong. Moreover, we cannot reverse a hearing officer's determinations of credibility and assessment of the evidence absent manifest error.
In the instant case, we find the hearing officer's determination that the plaintiff suffered an employment related accident was not clearly erroneous. At trial, there was testimony to support the plaintiff's contention that he suffered a employment related accident.
First, the plaintiff testified that he fell off the log hauling truck while attempting to load wood onto its bed. Second, Terry Williams, Key's supervisor, and James Crew, Key's co-worker, both saw Key laying on the ground after the alleged fall. It is well settled that courts may rely on the testimony of a claimant alone to establish the occasion on which he was injured, if: (1) his story is corroborated by surrounding circumstances, and (2) no other evidence discredits or casts serious doubts upon the worker's version of the incident. Bruno, 593 So.2d at 361. Nelson, 588 So.2d at 350.
After reviewing the record, we find that Key's contention to be adequately corroborated by Williams and Crew. Furthermore, the hearing officer chose to accept the testimony of Key as credible. We cannot say that such acceptance was manifestly erroneous. Thus, we hold that Key suffered a fall which constituted an employment related accident.

B. MAXIMUM MEDICAL CURE
The next assignment of error is brought by the plaintiff. Plaintiff asserts that the hearing officer erred in finding that he had reached maximum medical cure and was able to return to work by December 12, 1989. Plaintiff also asserts that the hearing officer erred in finding that all medical treatment subsequent to December 12, 1989, was unrelated to the October accident.
The hearing officer found that Key was able to return to work at least by December 12, 1989. The hearing officer based this decision on the trial testimony and depositions of Dr. Leon Dale Boersma (general medicine and surgery) and Dr. Joe Mitchell Smith (rehabilitation medicine) and after considering the contrary testimony of Dr. Robert C. Redina (chiropractic).
Dr. Smith, a specialist in rehabilitation medicine, first saw Key on December 1, 1989. Dr. Smith examined Key to determine the extent of his injury. Dr. Smith detected no real tenderness, and stated that Key had "good" motion in his shoulders and arms. Also, Dr. Smith believed that Key was neurologically intact, and that Key was able to twist, turn, bend and move without appreciable pain. Dr. Smith also testified that the straight leg test was negative, and Key's reflexes and strength were "good."
Dr. Smith took x-rays of Key's cervical spine and lumbar spine which revealed degenerative joint disease at C-6 and C-7. The x-rays also revealed spondylolysis at the L-5, S-1 level and revealed minor abnormality at the L-5 level. When asked by Dr. Smith, Key denied any prior injury. On December 12, 1989, Dr. Smith performed a nerve conduction study and concluded that it was negative. Based on the x-rays and nerve conduction study, Dr. Smith opined that Key had no nerve injury but was suffering from a mild musculoskeletal pathology.
As a result of this lawsuit, Dr. Smith was eventually furnished information about plaintiff's motorcycle accident in 1977. Dr. Smith testified that he reviewed the medical records of this accident and found that Key had suffered a fractured pelvis, a broken ankle, and removal of his spleen. Dr. Smith was of the opinion that Key's back and neck complaints could have *680 been caused by this prior accident. Concluding his testimony, Dr. Smith opined that on December 12, 1989, Key had reached maximum medical improvement and could return to full-time employment on that date.
Dr. Boersma examined Key on January 13, 1990 at the Lincoln Parish Detention Center where Key was incarcerated.[1] Dr. Boersma examined Key in order to determine if Key was physically able to remain at the detention center. Dr. Boersma examined Key again on January 27, 1990, at which time Key complained about weakness and swelling in his legs. Dr. Boersma found swelling in Key's legs but could not determine the cause. Dr. Boersma examined Key for the last time on February 10, 1990. On this date, Key had a "laundry list" of complaints which included: neck pain, drawing sensation in his abdomen, itching in his arm pits. Boersma gave a cursory examination and administered blood and urine tests. These tests were normal.
Dr. Redina, a chiropractor, first saw Key on March 20, 1990, when he performed an orthopedic neurological and chiropractic examination along with taking a series of xrays of Key's cervical and lumbar region. Dr. Redina reported that at this time Key was complaining of pain in his neck and lumbar region. Dr. Redina examined Key and noticed that he had difficulty walking. Dr. Redina also palpitated the trapezius area, the paraspinous muscles and the flanks of the lower back which he found elicited some tenderness. Dr. Redina palpitated the cervical region, the doral region, and the lumbar region where he found decreased mobility in the lower cervical region, upper thoracic and lower lumbar areas. Dr. Redina also conducted a formamina compression which is a test in which the patient sits upright and direct pressure is applied to the head in a downward direction. Dr. Redina reported that this elicited pain. Dr. Redina concluded that Key may be suffering from a nerve root compression.
Dr. Redina treated Key by chiropractic adjustments to the spine and concluded that Key's injuries were related to the October 23, 1989 accident and that Key could not return to work as of that date, March 20, 1990. On November 15, 1990, Dr. Redina gave Key another examination consisting of the same tests as the initial examination and found some improvement but still believed that Key could not return to work and could benefit from continued chiropractic care. However, Dr. Redina stated that Key's problems could have been caused by prior injuries and could be degenerative in nature.
After examining the above live testimony and depositions, the hearing officer held that all medical treatment after December 12, 1989 was unrelated to Key's October accident. This court is bound to follow the manifest error standard of review when examining a hearing officer's decision. We cannot say that the hearing officer was manifestly erroneous in finding that Key had reached his maximum medical cure by December 12, 1989, and that the medical expenses incurred after December 12, 1989 were unrelated to the October 23, 1989 accident.

C. KEY'S AVERAGE WEEKLY WAGE & PENALTIES AND ATTORNEY FEES
Plaintiff disputes the hearing officer's determination of the level of benefits to which he is entitled. Additionally, Key seeks the assessment of penalties and attorney fees. In light of the above disposition, these issues are moot.

CONCLUSION
In summary, we hold that when reviewing a worker's compensation hearing officer's decision the manifest error standard is the proper test to apply. We cannot say that the hearing officer was manifestly erroneous in finding that: (1) Key suffered an employment related accident on October *681 23, 1989; (2) Key was able to return to work on December 12, 1989; and, (3) All medical expenses incurred after December 12, 1989, were unrelated to the October 23, 1989, employment accident. Thus, we affirm the hearing officer's decision.

DECREE
The ruling of the worker's compensation hearing officer is affirmed.
AFFIRMED.
NOTES
[1] Key was in jail starting January 4, 1990, for 74 days. The charges causing Key's incarceration were dismissed and were unrelated to his work.