803 So.2d 321 (2001)
Gregory L. PAYNE, Plaintiff-Appellee,
v.
LAWN LOURD LAWN SERVICE, Defendants-Appellants, et al.
No. 35,491-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2001.
*322 Hudson, Potts & Bernstein, L.L.P., by Jan P. Christiansen, Counsel for Appellant, Lawn Lourd Lawn Service.
Egan, Johnson & Stiltner, by Patricia L. Barfield, Counsel for Appellant, Louisiana Workers' Compensation Corporation.
*323 Louis G. Scott, Counsel for Appellee.
Before CARAWAY, PEATROSS & KOSTELKA, JJ.
PEATROSS, J.
This is an appeal from a judgment by the Workers' Compensation Judge ("WCJ") which found that Defendants, Lawn Lourd Lawn Services ("Lawn Lourd") and the Louisiana Workers' Compensation Corporation ("LWCC"), failed to provide adequate vocational rehabilitation to Plaintiff, Gregory Payne, following an injury he sustained during the course and scope of his employment with Lawn Lourd. Specifically, the WCJ found that four potential jobs identified by the vocational rehabilitation counselor for Mr. Payne required activities that were outside of the physical restrictions imposed on him by his treating physician. In addition, the WCJ found that the jobs were not "available" to Mr. Payne because the jobs had not first been submitted to his treating physician for approval prior to being mailed to him. Mr. Payne's supplemental earnings benefits ("SEBs") were reinstated by the WCJ and Defendants were ordered to provide further vocational rehabilitation services to him. Mr. Payne was ordered to obtain his GED and driver's license and to cooperate with the vocational rehabilitation worker. Defendants suspensively appeal. For the reasons stated herein, we reverse the judgment of the WCJ.

FACTS
Mr. Payne was injured in an automobile accident during the course and scope of his employment with Lawn Lourd. As a result of the accident, Mr. Payne sustained a major hip injury and a less severe back injury (protruding vertebrae). His treating physician was Dr. Douglas Liles. Mr. Payne required hip replacement surgery and Dr. Liles imposed general activity and employment restrictions commensurate with his condition. Defendants provided Mr. Payne vocational rehabilitation services. Helen Carroll was the vocational counselor initially assigned to Mr. Payne and who conducted the initial assessment/interview with him. The hip surgery, however, interrupted the vocational counseling and Ms. Carroll closed the file. When the file was re-opened following the surgery, Charles Smith, who was working for Ms. Carroll as an apprentice at the time, was assigned to Mr. Payne's case.[1] In August 1998, Mr. Smith contacted Mr. Payne and Dr. Liles to schedule a rehabilitation conference, after which it was determined that Mr. Payne had reached maximum medical improvement and could return to work in the medium category. Mr. Smith then conducted a labor market survey on January 10, 2000, and identified four jobs at the following businesses which he believed to fit the physical restrictions placed on Mr. Payne by Dr. Liles: (1) Lube Plus; (2) Snappy Lube; (3) West Monroe Golf Cart Sales; and (4) Johnny's Pizza No. 1. Mr. Smith mailed the job availability studies to Mr. Payne and to Dr. Liles for approval that same day. Mr. Payne testified at trial that he received the availability studies the following day, January 11, 2000.
On receipt of the availability studies, Mr. Payne took them to Dr. Liles for his approval rather than applying for the jobs. Dr. Liles gave his verbal approval of the jobs to Mr. Payne; however, Mr. Payne *324 still did not apply for any of them. LWCC received the job availability studies bearing Dr. Liles' signature of approval on each of the four studies on January 26, 2000. On March 31, 2000, Mr. Paynes' SEBs ($105.09 per week) were terminated due to his failure to contact any of the potential employers identified for him.
At trial, Mr. Payne contended that the job descriptions contained in the four job availability studies were beyond the restrictions placed on his activity by Dr. Liles. Mr. Payne and his mother both testified, each describing Mr. Payne's limitations and the continued pain he was experiencing even with normal activity. Mr. Payne also testified that his failure to apply for the jobs was because of his lack of transportation-his driver's license was suspended due to a DWI conviction approximately seven years prior to the trial of this matter[2] -and a lack of funds for public transportation.
Mr. Smith was called as a witness on behalf of Defendants; however, the WCJ excluded his testimony due to his unlicensed status at the time he was working with Mr. Payne. Defendants proffered Mr. Smith's testimony, but this issue has not been raised on appeal. Ms. Carroll, Mr. Smith's direct supervisor, testified concerning the vocational rehabilitation efforts undertaken by herself and Mr. Smith on behalf of Mr. Payne. She described the services rendered Mr. Payne and explained the processes of performing the labor market survey and compiling the job availability studies. Ms. Carroll testified that it is the role of the vocational counselor to match a claimant's physical capabilities with employment opportunities currently available in the claimant's geographic area. The physician is also notified and approval of the jobs identified is requested. According to Ms. Carroll, if a claimant becomes employed at an identified job, but the physician subsequently disapproves of the job, the claimant would not be required to retain the employment and vocational rehabilitation services would continue until suitable employment is located.
Dr. Liles' deposition was introduced in lieu of his live testimony. In his deposition, Dr. Liles described the restrictions placed on Mr. Payne, which will be fully discussed later in this opinion.
At the conclusion of the trial, the WCJ found that the jobs identified for Mr. Payne were outside of the physical restrictions imposed by Dr. Liles and reinstated benefits to Mr. Payne, ordered Mr. Payne to complete his GED and to attempt to get his driver's license and ordered further vocational counseling.

DISCUSSION
An employee who is injured as the result of a work-related accident is entitled to SEBs if the injury renders the employee unable to earn at least 90 percent of his or her pre-injury wage. La. R.S. 23:1221(3)(a). The burden of proving this rests with the employee. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. If the employee succeeds in carrying this burden, the burden shifts to the employer to prove that the employee is physically able to perform a certain job and that the job was offered to the employee, or that the job was available to the employee in his or her or the employer's geographic region. La. R.S. 23:1221(3)(c)(i); Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 *325 (La.7/1/97), 696 So.2d 551. Actual job placement is not required. Turner v. Sunbelt Manufacturing, 32,691 (La.App.2d Cir.6/14/00), 763 So.2d 770. If the employer satisfies its burden of showing that the claimant was physically capable of work and that work was offered or available, the claimant must show, by clear and convincing evidence unaided by any presumption of disability, that he is unable to perform employment offered or available solely as a consequence of substantial pain. La. R.S. 23:1221(3)(c)(ii); Baker v. Libbey Glass, Inc., 32,748 (La.App.2d Cir.5/10/00), 759 So.2d 1007, writ denied, 00-1676 (La.9/15/00), 768 So.2d 1280; Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2d Cir.1991).
The findings regarding such issues are factual in nature; therefore, the manifest error/clearly wrong standard applies on appeal. Banks, supra. Under this standard, the reviewing court may reverse only if it finds that no reasonable factual bases exist for those findings which are clearly wrong or manifestly erroneous. Wilkerson v. Kansas City Southern Ry., 33,922 (La.App.2d Cir.11/1/00), 772 So.2d 268, writ denied, 00-3526 (La.2/16/01), 786 So.2d 105. In the case sub judice, we find that the WCJ manifestly erred in several findings.

Availability: Suitability of identified jobs
In Banks, supra, the supreme court established the minimum standard which the employer must prove, by competent evidence, in order to prove job availability:
(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region:
(2) the amount of wages that an employee with the claimant's experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.
By "suitable job" we mean a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant's age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education.
The primary focus in the present case is on the first requirement of Banks, supra, i.e., the suitability of the jobs identified by Mr. Smith. The critical factual finding in this regard concerns the degree of restriction placed on Mr. Payne by Dr. Liles. This finding is critical because the degree of restriction dictates whether or not the jobs identified by Mr. Smith were within Mr. Payne's physical capabilities as required by Banks, supra. After a thorough review of the record, we find that the WCJ misinterpreted Dr. Liles' testimony regarding the restrictions. This misinterpretation renders manifestly erroneous the WCJ's conclusion that the jobs were not within those restrictions and, thus, were not available.
We will first review the pertinent testimony of Dr. Liles regarding the restrictions placed on Mr. Payne. In his deposition, Dr. Liles testified as follows:
Q: Now since his hip replacement, does he have any restrictions now?
A: Absolutely, I just don't want a patient with a joint replacement doing heavy manual labor. It's just not made for that. It's made to get him out of pain and let him pursue a life style it doesn't included (sic) playing *326 tennis or playing basketball or running track or climbing mountains.
Q: So would you say there has been, has there been any reduction, let's say in the following activities has there been any reductions in the amount that he could do like climbing?
A: I'm less worried about climbing as I am in picking and carrying heavy objects, getting in awkward positions down on his knees and things like that.
Q: So bending could affect his hip?
A: Right.
* * *
Q: What about walking for long periods of time?
A: I'm less worried about that than him walking carrying buckles (sic) of whatever, the heavy things that's going to increases (sic) his stress across his joints.
* * *
A: ... It's not that he can't do it's that we want his hip to be good fifteen years from now. We don't want him beating it up doing awkward things and carrying heavy loads and jumping down from heights where he's going to stress the metal on plastic ....most of the restricts (sic) are aimed at gaining life span of the hip that he's got.
In addition, Dr. Liles testified that Mr. Payne can go up and down stairs, but he would not approve of his "going up and down stairs all day long ... he could walk most of the day, certainly sit ... I just don't want him doing the heavy lifting. The heavy manual labor, walk on the rough ground all day long ... [t]hat's where you will wear the plastic out."
Dr. Liles agreed that, in March 1999, post hip-replacement surgery, Mr. Payne had reached maximum medical improvement; and, in May 1999, he released Mr. Payne to "light to medium level work with a thirty-five pound lifting maximum." Further, Dr. Liles agreed that that was his opinion of Mr. Payne's restrictions as of the date of his testimony. Specifically, Dr. Liles testified that, while he was not released to his regular employment of lawn maintenance, Mr. Payne could work an eight-hour day; he could sit continuously up to 100 percent of the day; he could walk up to 66 percent of the day; he could stand occasionally, or up to 33 percent of the day; his kneeling, squatting, crawling and climbing were very limited, which Dr. Liles testified meant that these activities could be performed very occasionally, or less than 33 percent of the time; he could reach above shoulder level and push and pull as much as 66 percent of the time; and he could drive. Again, Dr. Liles clearly stated that the above opinions represented his recommendation of restrictions on Mr. Payne's physical activities as of the date of the taking of his testimony.
Dr. Liles acknowledged that Mr. Payne should be careful over the long term to avoid activities which might result in dislocation of the hip (heavy loads, jumping down from heights, awkward movements or a fall of some force); however, he testified that the use of caution in doing things such as "crossing his leg, sitting in low stool" was more for the time immediately following the hip replacement surgery. Regarding the use of Mr. Paynes' walking cane, Dr. Liles specifically testified that the use of a cane is not his recommendation; he opined that Mr. Payne could walk without it.
Against this backdrop of the physical restrictions as consistently stated by Dr. Liles, we review the physical demands of *327 the jobs identified by Mr. Smith. Both lube attendant jobs involved standing/walking five to six hours per day with some bending, climbing and reaching, but no kneeling, crawling, pushing or pulling. The golf cart repair job involved occasional stooping, kneeling and crouching and frequent reaching, handling, fingering and use of near visual acuity. The cashier position at Johnny's Pizza, which seems to be the most suitable job for Mr. Payne in this court's opinion, involved standing and walking, with some bending and reaching to retrieve cooking items and supplies.
Dr. Liles testified that he approved all four of the above-described jobs.[3] While he did opine that the lube attendant positions would be borderline or marginal if they required "climbing in and out of the pit all day long," Dr. Liles also stated that a reasonable job modification could be made in that respect; and, significantly, he did not withdraw his approval of the jobs.
As previously stated, the WCJ found that none of the jobs identified by Mr. Smith for Mr. Payne were commensurate with the restrictions set forth by Dr. Liles, despite Dr. Liles' verbal and written approval of them. Her review of the job descriptions led her to conclude that all of the jobs entailed crouching, bending, squatting, standing, crawling, climbing and kneeling, all of which, in her opinion, were activities "completely" restricted by Dr. Liles. This misinterpretation can be seen in her reasons for judgment wherein she states "the medical and lay testimony seemed to indicate to me that the claimant as per Dr. Liles can perform sedentary work." This is a correct statement in that Mr. Payne can perform sedentary work, but nowhere in the record is he restricted to only sedentary work. Dr. Liles clearly testified that Mr. Payne was released to medium level employment. The WCJ strictly interpreted Dr. Liles' testimony to mean that Mr. Payne could never perform such activities as kneeling, squatting, crawling and climbing. A complete reading of Dr. Liles' testimony, however, reveals that such activities were restricted, but Mr. Payne could perform them on a very occasional basis, or less than 33 percent of the time.
Perhaps the best summary of the post-hip replacement surgery restrictions placed on Mr. Payne is found in a letter from Mr. Smith to Dr. Liles confirming Dr. Liles' restrictions on Mr. Payne and his opinion of Mr. Payne's physical capabilities which were discussed in the vocational rehabilitation conference on May 19, 1999, after the hip replacement surgery.[4] The letter reiterates Dr. Liles' opinion that "limitations include the client not being involved in repetitive stooping or crouching activity" and "should not engage in repetitive bending from the waist; although, bending to perform most tasks should not present difficulty." Further, "the client should be able to perform work in the general medium duty category with weight not exceeding 35 pounds on an occasional basis. You suggest that stocking type activities should be avoided as they are generally to (sic) repetitive." Dr. Liles signed this letter in concurrence with *328 its summary of the rehabilitation conference and the conclusions drawn therefrom by Mr. Smith.
We are mindful that our standard of review leaves reasonable inferences of fact to the discretion of the trier of fact. When those determinations are clearly wrong, however, as in the case sub judice, this court must reverse. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993); McGough v. Oakwood Mobile Homes, Inc., 34,091 (La.App.2d Cir.11/1/00), 779 So.2d 793. After reviewing the evidence in this case, we can find no reasonable basis in this record for the WCJ's finding that the jobs identified by Mr. Smith and approved by Dr. Liles were outside of the restrictions imposed by Dr. Liles on Mr. Payne.
In addition, we find significant that the WCJ only addressed three of the four jobs identified by Mr. Smith in her reasons for judgment. There is no mention whatsoever of the job opportunity at Johnny's Pizza. We find that the WCJ erred in failing to consider this job opening; the record indicates that this job may well have been the most suited for Mr. Payne. In order to find that Lawn Lourd failed to meet its burden of proof under Banks, supra, it is necessary for the WCJ to evaluate and consider each of the jobs identified for Mr. Payne. Failure to do so was manifest error.

Availability: Prior Physician Approval
In her reasons for judgment, the WCJ stated:
"... So the showing of availability and that the claimant is physically able to perform [the jobs] in the wayAnd how do you show that the claimant is physically able to perform the jobs? You have them approved by a doctor, but you have to have them approved by the doctor as a part of the availability requirement.
So inasmuch as the defendants have failed to show that those jobs were available and/or approved by their physician, the Court finds that [the jobs] were not in fact available."
In essence, the WCJ held that, because Defendants did not gain approval of the jobs by Dr. Liles before notifying Mr. Payne of the job openings, the jobs were not available within the meaning of the statute and jurisprudence. We disagree. We can find no statutory or jurisprudential requirement of physician approval of jobs prior to notification of the claimant. To the contrary, in the appropriate factual scenario, at least one court has held that prior physician approval is not part of the availability requirement. See Wiley v. Grand Casino Avoyelles, 98-1468 (La.App. 3d Cir.4/21/99), 731 So.2d 518, writ denied, 00-2032 (La.11/5/99), 750 So.2d 180. The third element of Banks, supra, specifically requires that there be an open position at the time a claimant is notified of a potential job. Defendants argue that, to require physician approval prior to notification of the claimant, would, in many cases, result in the position being filled while awaiting physician approval. We can find no reason why sending simultaneous notification to the claimant and physician is not appropriate. This practice furthers the goal of allowing the claimant the opportunity to secure the job while the position is open; and, in the event the physician does not approve of the job, the claimant is under no obligation to continue the employment. In this regard, Mr. Smith's correspondence of January 10, 2000, to Mr. Payne, which included the four job availability studies, stated that, "[s]hould Dr. Liles not approve any position, you would of course not be expected to take that position if it is offered to you." In such case, vocational counseling would continue. We *329 find, therefore, that the WCJ's conclusion as quoted above is erroneous.
In summary, after reviewing the testimony in this case, we conclude that Defendants satisfied their burden of showing that Mr. Payne was physically capable of work and that work was offered or available. In order to be entitled to reinstatement of benefits, therefore, Mr. Payne had to show, by clear and convincing evidence unaided by any presumption of disability, that he was unable to perform employment offered or available solely as a consequence of substantial pain. La. R.S. 23:1221(3)(c)(ii); Baker, supra; Lubom, supra. We reiterate that Mr. Payne failed to apply for, much less attempt to perform, any of the jobs identified for him. In addition, he presented no evidence that he would be in substantial pain performing the types of employment available to him. We find, therefore, that Mr. Payne did not satisfy this burden and is not entitled to reinstatement of SEBs. We do note, however, that Mr. Payne is not precluded from seeking Workers' Compensation benefits in the future should his condition and the factual circumstances warrant reinstatement of benefits.
On a final note, we agree with the WCJ that Mr. Payne's chances for successful placement in the workplace would be dramatically increased if he would obtain his GED. The record indicates that Mr. Payne has an interest in doing so and we find that, as a part of his vocational rehabilitation, the order of the WCJ that he complete this goal was appropriate. Likewise, we agree with the statement of the WCJ that the lack of transportation is not a sufficient excuse for failing to apply for the jobs identified through the rehabilitation process, which were within Mr. Payne's geographic area. The satisfaction of the employer's burden of proof of the "availability" of suitable employment for the claimant is not enervated by the claimant's half-hearted and unsuccessful efforts, and, in this case, total lack of effort, to obtain the available employment. See Mayeux v. Kentucky Fried Chicken, 28,163 (La.App.2d Cir.4/3/96), 671 So.2d 1261, writ denied, 96-1133 (La.6/7/96), 674 So.2d 966.

DECREE
For the reasons stated herein, the judgment of the Workers' Compensation Judge is reversed. Costs are to be borne by Plaintiff, Gregory Payne.
REVERSED.
NOTES
[1] Mr. Smith has since become a licensed vocational counselor. During the time he worked with Mr. Payne, Mr. Smith was under the direct supervision of Ms. Carroll as required by state law. Mr. Smith's status during his counseling of Mr. Payne is not an issue on appeal.
[2] The record indicates that Mr. Payne was driving without his license at the time the automobile accident occurred.
[3] The record reveals that there were other jobs presented to Dr. Liles for approval during the span of Mr. Payne's vocational rehabilitation, some of which were approved and others of which he did not approve. Only the four jobs described herein are at issue in this appeal; however, we find telling the fact that nowhere in the record is there an indication that Mr. Payne actively investigated or applied for any of the jobs selected by Mr. Smith.
[4] This letter was part of the proffer to the court during Mr. Smith's testimony, but was subsequently admitted into evidence as part of the medical records of Dr. Liles.