565 So.2d 516 (1990)
J.V. DUNN, Plaintiff-Appellant,
v.
ALLEN PULPWOOD, Bruce Allen and Commercial Union Insurance Company, Defendants-Appellees.
No. 21520-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1990.
Rehearing Denied July 24, 1990.
*517 William H. Baker, Jonesboro, for plaintiff-appellant.
Theus, Grisham, Davis & Leigh by Thomas G. Zentner, Jr., Monroe, for defendants-appellees.
Before MARVIN, NORRIS and HIGHTOWER, JJ.
MARVIN, Judge.
In this w.c. action the claimant appeals a judgment rejecting his demands. He contends that his disability should have been found, or presumed, to have been caused in fact by an accident he sustained on January 2, 1988.
The issue is primarily factual. We affirm.

FACTS
Claimant Dunn was an independent contractor for 20 years, cutting and hauling pulpwood with his saws, trucks, and other equipment.
Beginning in 1981, Dunn had several work-related incidents or accidents. In July 1981, Dunn experienced dizziness and was found to have suffered a heat stroke while working. He did not miss any work. In December 1982, Dunn stepped in a hole, injuring his low back. He underwent a laminectomy at the L5-S1 level. Dunn was paid w.c. benefits for the 1982 accident and later returned to work solely in a supervisory capacity.
On February 2, 1983, Dunn continued to complain of low back pain, for which he *518 was treated for about six weeks. EMG studies and a CT-scan were then "normal." He was diagnosed as having hypertension and a "chronic and recurring trauma to his back, in the form of chronic and recurring lumbosacral muscle strain." He was expected to experience "continued low back discomfort with almost any work."
In 1985, while lifting a heavy object, Dunn suffered a heart attack. Following a lengthy period of recuperation and rehabilitation, Dunn returned to work again in a supervisory capacity. He was paid compensation and thereafter settled his compensation claim.
In 1987, Dunn had four work-related incidents or accidents. In May, he suffered a heat stroke. In September, he sustained a leg injury and low back pain when a stick of wood fell on him. The other incidents in 1987 did not involve his cardiovascular system or his back. After each incident, he was paid compensation benefits and shortly thereafter returned to work supervising his crew.

THE ACCIDENT
On January 2, 1988, Dunn (then age 58) and two crew members, James Lewis and Reg Singleton, were repairing the boom of a front-end loader. Dunn and Lewis were lifting the boom about 3-4 feet to allow Singleton to replace the boom pin when Dunn became dizzy and nauseated. He reported these symptoms to his co-workers but assisted them in completing the boom repair before they left the woods.
Worried about a heart attack, Dunn went to his physician, Dr. Rel Gray, who hospitalized him. The next day, Dunn telephoned his employer to report the accident and his symptoms.
After two days, Dunn was discharged by Dr. Gray, who diagnosed him as having pylorospasm (tightening of the muscles at the stomach outlet) and gastroesophageal reflux (reflux of acid into his chest and esophagus) and noted Dunn's past history of angina and hypertrophic subaortic stenosis. Finding these things and his pre-existing heart condition were causing Dunn's complaints, Dr. Gray advised him to continue his regular heart and blood pressure medications and return in two weeks for further examination.
Still concerned about his heart condition, Dunn then drove himself from Ruston to Houston, where he sought and underwent further cardiac testing. The Houston doctors determined that Dunn had an 80 percent blockage of his coronary arteries.
Dunn drove home from Houston after a few days and reported to Dr. Gray on January 26 the results of his Houston tests. He was then complaining only of "gas pains," which Dr. Gray treated with medication.
Dunn saw an attorney who referred him to Dr. Raymond Dennie, a general practitioner, on February 2. He then for the first time complained of low back pain radiating into both legs. Dunn discussed with Dr. Dennie his recent heart problems and diagnosis and his January 2 accident. He advised Dr. Dennie that his back pain began two weeks after the accident. He also informed Dr. Dennie of his 1982 laminectomy at L5-S1, stating that his 1988 pain was different from his 1982 pain which he described as then being only on the right side into his right leg.
Dr. Dennie noted palpable tenderness over both the right and left posterior superior iliac, with mild to moderate spasm. His diagnosis was acute lumbosacral sprain. He treated Dunn with medication and a TENS unit. He opined that Dunn had not sustained a recurrent ruptured disc, but that Dunn could not then return to work.
Dunn returned to Dr. Dennie on February 17, still complaining of low back pain and reporting that he was unable to return to his former employment. Dunn's physical examination this day was noted as "relatively negative." Because of Dunn's continued complaints and x-rays revealing a degenerative disc and a narrowing of the L5-S1 disc space, Dr. Dennie recommended that Dunn have an MRI test to aid his diagnosis of Dunn's back problem. This test was not approved by the w.c. insurer and was never performed.
*519 On March 3, 1988, Dunn went to the Lincoln General Hospital emergency room, complaining of both chest and low back pain. He was admitted to the hospital. The following day, Dunn was again seen by Dr. Gray. Dr. Gray's physical examination revealed palpable tenderness at L5-S1 level and junctions bilaterally, worse on the left side. His diagnosis was a lumbosacral strain.
Dr. Gray consulted with several other physicians. Dr. J.M. Smith conducted new EMG studies and a physical examination. Dunn's EMG revealed some evidence of S1 nerve pathology, electrical dysfunction of unknown cause within the S1 nerve and denervation and nerve root impingement at the L5-S1 level. On physical examination, Dr. Smith found tenderness at the left sacro iliac joint, though he noted that Dunn did not appear to be in "acute distress."
A CT scan indicated Dunn had a new disc protrusion at the L4-L5 disc space posteriorly and to the right at a different location (higher) than the 1982 L5-S1 surgery and which extended to the upper margin of the primary L5 right laminectomy. A laminectomy defect at the L5-S1 level was also noted. The radiologist said his findings "does not seem to correlate with [Dunn's] history [of] both legs being painful."
Dr. Gray also consulted with Dr. Ben Haley, who gave Dunn an epidural injection of cortisone and an anesthetic for pain relief on the left at the L3-L4 level in an attempt to reduce tissue swelling, decrease pressure on the sciatic nerve and prevent potential future surgery. Dunn experienced only temporary relief.
Following his discharge from the hospital, Dunn consulted with and was treated by Drs. Gray and Dennie. During visits with Dr. Gray on April 23 and on June 2, Dunn had no back complaints. On June 2 Dunn's low back problems, according to Dr. Gray, were secondary to his primary complaint of prostatitis.
Dunn's last visit with Dr. Dennie was on June 20 for a complete examination. Dunn then complained of low back pain, radiating only into his right hip and leg, and of weakness in his right leg. Noting the positive EMG studies and the CT-scan results from Dunn's March hospitalization, Dr. Dennie again suggested an MRI test and opined that Dunn was still disabled.
When the insurer declined to pay for the MRI and to pay disability benefits for Dunn's low back problems, Dunn brought his action.
At defendants' request Dunn was examined by Dr. Douglas Brown, an orthopedic surgeon, on July 14. Dunn gave Dr. Brown a brief history of being injured on January 2, when he "bent down to pick up a stick [piece of wood] and his back started hurting." Dunn did not mention lifting the boom. Dunn informed Dr. Brown he had not worked since the January 2 incident.
Dunn said his "tingling" back pain was located only in a small area on the right side above the hip and made no reference to pain radiating across his back or down his leg. He also reported his previous back problems, including his 1982 laminectomy. Dr. Brown's physical examination showed no evidence that Dunn was in pain or limping when he walked around his office and did not reveal any sciatic nerve tension or pressure. Dr. Brown found palpable tenderness only over Dunn's right iliac crest (pelvic bone) and over to his right side. Dr. Brown's x-rays showed Dunn's previous laminectomy on the right side and narrowing of the L4 disc space. Based upon Dunn's medical history and his previous medical reports provided by the employer, Dr. Brown's diagnosis was an acute lumbar strain. He attributed Dunn's low back pain to his previous right L5 laminectomy and recommended an MRI to "rule out any recurrent or new disc problems." The employer again declined to pay for this test.
Trial was held on August 10, 1988. The employer did not dispute that a work-related accident occurred or Dunn's disability. The employer contended that Dunn's belated back complaints were not causally related to the January 2 accident and that the accident did not result in permanent disability.
*520 The evidence consists of oral testimony, medical depositions and reports, employment records and a video tape purporting to show Dunn working with his crew on May 6 and 9. Dunn testified that he became dizzy and nauseated while he and his co-workers were repairing the boom. Dunn could not remember the exact date he first experienced back pain, but stated it occurred two weeks after he returned from Houston. He said his low back pain thereafter progressively worsened. He denied he had worked or done anything to strain or otherwise hurt his back and concluded that he had injured his back while lifting the boom on January 2.
Dunn also testified that after his 1982 laminectomy, his 1985 heart attack and his other work-related accidents, he always returned to work in the pulpwood industry. He said that before his January 2 accident, he felt good, had no back pain and worked daily in the woods, supervising his men and repairing his equipment. Dunn admitted he went into the woods on a "couple" of occasions after January 2 but stated that he did not work and has been unable to return to work because of his severe back pain.
Dunn's testimony was generally corroborated by his employer who said he had no reason to doubt Dunn's injury or complaints of pain. He had seen Dunn in the woods once or twice since the January 2 accident when Dunn was using a cane and was not doing any type of work.
The testimony of Dunn's employees conflicted. Lewis testified that while he, Singleton, and Dunn were repairing the boom, Dunn suddenly sighed and stated he hurt his back. Lewis said he observed that Dunn became "sick." Singleton, Dunn's distant relative, testified Dunn only commented that day he was hurting and "didn't feel good" and that Dunn merely said, "let's go," but did not explain what was wrong with him.
The medical evidence consisted of the testimony of Dr. Smith, depositions and medical reports of Drs. Gray, Dennie, and Brown and medical reports of Drs. Haley and Smith. Only Drs. Gray, Dennie and Brown testified on the critical issue of causal connection.
The trial court found that Dunn was involved in a work-related accident and that he was disabled, but concluded Dunn was not entitled to the "presumption of causation" and that there was insufficient evidence to show a causal link between his accident and his low back condition.

CAUSAL NEXUS BETWEEN ACCIDENT AND DISABILITY
Our review is under the manifest error-clearly wrong standard. ESCO v. Rosell, 549 So.2d 840 (La.1989); Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987). We give great weight to the trier of fact's factual conclusions, reasonable evaluations of credibility, and reasonable inferences of fact which we do not disturb even though we may feel our own evaluations and inferences are equally reasonable. Rosell, supra; Ducote v. J.A. Jones Construction Co., 471 So.2d 704 (La. 1985); Cadiere v. West Gibson Products Co., Inc., 364 So.2d 998 (La.1978).
A worker's compensation claimant has the burden of establishing his disability and its causal relation with his employment accident by a preponderance of the evidence. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. In order for the employee to recover, it must be determined that his employment somehow caused or contributed to his disability, but it is not necessary that the exact cause be found. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985).
A claimant's disability is presumed to have resulted from an accident if before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously thereafter manifest themselves, providing either that there is sufficient medical evidence to show there is a reasonable possibility of causal connection between the accident and the disabling condition *521 (Allor v. Belden Corp., 393 So.2d 1233 (La.1981); Lucas v. Ins. Co. of N.A., 342 So.2d 591 (La.1977)), or that the nature of the accident, when combined with other facts of the case, raises a natural inference through human experience that such a causal connection exists. Haughton v. Fireman's Fund American Ins. Co., 355 So.2d 927 (La.1978).
An employee's pre-existing disease or infirmity does not disqualify his w.c. claim if the work-related injury either aggravated and accelerated, or combined with, the disease or infirmity to produce the disability for which compensation is claimed. When an employee shows (a) that before the accident he had no manifest disabling symptoms, and (b) that commencing with the accident the disabling symptoms appeared and thereafter continuously manifested themselves, the accidental injury is presumed to have aggravated, accelerated, or combined with the employee's pre-existing disease or infirmity to produce his disability if the evidence shows a reasonable possibility of causal connection between the accident and the disabling condition. Walton, Haughton, cited supra.
If the evidence is evenly balanced, or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, the trial court may conclude that the claimant has failed to carry his burden of proof. The trial court may weigh the credibility of a w.c. claimant. Walton, supra; Gonzales v. Babco Farm, Inc., 535 So.2d 822 (La.App. 2d Cir.1988), writ denied; Loyd v. IMC Fertilizer, Inc., 557 So.2d 1078 (La.App. 2d Cir.1990).
Once an employee establishes the prerequisites to apply the presumption of causal relationship, the employer has the burden of producing evidence to persuade the trial court that it is more probable than not that the work-injury of which the employee complains did not result from the accident or did not accelerate, aggravate or combine with the pre-existing disease or condition to produce the disability. Walton, supra.

THE COURT'S CONCLUSIONS
Citing the equivocal medical testimony and Dunn's lengthy round trip drive from Ruston to Houston, the trial court stated that the evidence established only a "possibility," but not a "reasonable possibility," of a causal connection between the accident and the alleged disabling back injury. We must determine whether the trial court's conclusion is manifestly erroneous, clearly wrong.
Dunn had a myriad of health problems, including a serious heart and chronic back condition. These pre-existing conditions, as we have noted, do not necessarily preclude Dunn's claim. Dunn was able to work and supervise his crew for months prior to his January 2 work-related accident.
Emphasizing this fact, his "honesty" in admitting he did not immediately experience low back pain and the trial court's factual findings that a work-related accident occurred and that Dunn is now disabled, Dunn argues he is entitled to the presumption of causal connection, citing Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (La.1968). Dunn broadly asserts that where the accident and resulting disability is proved, without any intervening cause, the accident is presumed to have caused his low back disability.
Bertrand and other cardiovascular-heart attack cases must be distinguished. Bertrand immediately experienced symptoms of tachycardia (rapid heart beat) for the second time in nine months while he was performing heavy labor. All medical experts thereafter refused to allow Bertrand, who previously experienced no disabling symptoms of heart disease, to return to work. Before these incidents Bertrand was asymptomatic and had no signs of dormant heart disease. Bertrand would have clearly met the later Walton test in any event.
Here, Dunn's back symptoms did not commence with or shortly after the accident. Immediately and for one month after the accident Dunn's repeated complaints to physicians were related only to his stomach and his heart condition. According *522 to the record, Dunn did not complain of back pain to any doctor until February 2, when he saw and was treated by Dr. Dennie, to whom his lawyer referred him. Yet Dunn had been seen and was treated for a month by Dr. Gray, his regular physician for many years, and by the Houston cardiac specialist.
Further, there is little evidence, medical or lay, indicating there was a reasonable possibility of causal connection between his January 2 accident and his present low back complaints of pain. Not one lay witness so testified. The medical "dispute," if any, arose only over the medical cause of Dunn's low back complaint [old laminectomy or new protrusion] and did not focus on or answer whether he sustained a back injury or aggravation when the lifting incident occurred on January 2.
Dr. Gray said that Dunn's January 1988 hospitalization was "definitely" connected only with and resulted from Dunn's heart problems. Dr. Gray said he would ordinarily have expected Dunn's low back pain to have manifested itself within three weeks, but noted that Dunn "could have been preoccupied" with having just undergone a heart catheterization which would have focused his attention on that circumstance. Dr. Gray stated Dunn could have been unaware or unconcerned about his back pain because of his severe chest pain.
Dr. Gray further testified that Dunn's apparent over-exertion and symptoms on January 2 could have caused or aggravated Dunn's heart condition and, based on Dr. Gray's knowledge of Dunn's business, "could possibly" have been related to a lumbar strain or a possible disc protrusion, even though Dunn's condition did not become immediately symptomatic.
Dr. Gray did not then "feel" that Dunn should do any heavy labor specifically because of his heart condition, but said that his chronic and recurring low back pain was also a sufficient reason to preclude heavy labor. When asked whether Dunn's January 2 accident "caused" Dunn's 1988 low back condition and complaints, Dr. Gray answered there was a "possible" connection. Invited to state that the connection was medically probable, Dr. Gray said he preferred the word "possible."
Dr. Brown concluded otherwise. Noting Dunn's history of heart problems and initial complaints of dizziness and nausea, Dr. Brown, an orthopedist, testified the symptoms Dunn first experienced were not compatible with or indicative of a ruptured disc. Further noting Dunn's previous chronic back problems and the various medical reports indicating Dunn had a right L5 laminectomy defect and a possible new left L4 disc protrusion, Dr. Brown emphasized that Dunn was inconsistent in complaining to him of low back pain only on his right side and in a very limited area when his complaints to other doctors were compared.
Dr. Brown agreed that an MRI would be of some diagnostic benefit and would provide "valuable information" to determine whether Dunn had a right disc protrusion at the L4 space. He said, however, that a MRI was not required for Dunn's treatment and would not indicate when Dunn injured his back.
Dr. Brown opined Dunn's belated low back pain probably emanated from the right laminectomy defect that remained from Dunn's 1982 surgery. Dr. Brown further opined it would be difficult, with Dunn's various medical problems, to say with any medical certainty that his belated low back complaint was related to the January 2 accident. Dr. Dennie deferred to Dr. Brown's opinion.
The nature of the accident, when combined with other facts, does not raise a natural inference that the causal connection exists, especially in view of the inconsistency, reflected in medical records and physician depositions, in Dunn's explanation to his doctors as to how and when his back injury and his pain occurred.
At his initial hospital visit with Dr. Gray, Dunn complained only of nausea, dizziness, shortness of breath and a squeezing chest pain. These complaints, according to Dr. Gray, indicated only a possible heart problem. At his January 26 follow-up visit with Dr. Gray, Dunn complained of only gas pain, not of back pain. Then on February *523 2, Dunn complained to Dr. Dennie of low back pain, which Dunn then said started about two weeks after the January 2 accident. Dunn returned from Houston sometime before January 26.
Dunn's March 3 Lincoln General Hospital emergency room records note that Dunn "hurt [his] back several days ago " and had been suffering back pain for "3 to 4 days." After being admitted to the hospital, Dunn stated to Dr. Gray that his back pain had begun "since January" and had gradually worsened. Dunn told Dr. Brown and his nurse, however, that his back "pain started" on January 2 when he bent down to pick up a piece of wood.
Before the January 2 accident Dunn routinely helped and supervised his crew for several months. Whether there is a causal connection between an accident and the disability of which a claimant complains is a factual question which depends, to a large extent, on expert testimony. Expert testimony may be weighed as any other testimony. Malone & Johnson, 13 Louisiana Civil Law Treatise, "Worker's Compensation," Secs. 253, 256 and 259 (2d Ed. 1980 & 1990 Supp.).
The medical and circumstantial evidence indicates some possibility of a causal nexus between Dunn's January 2 accident and his back complaints of a month later. That possibility, however, was not deemed reasonable particularly where those complaints did not commence until February 2, and only after driving round trip to Houston. A w.c. claimant in such circumstances is not entitled to the presumption of causal connection. The trial court did not manifestly err in denying application of the presumption of causal connection or in concluding that Dunn otherwise failed to prove the reasonable possibility that the January 2 accident and the low back complaints arising a month later were causally related. Walton, Gonzales, and Loyd, cited supra. The trial court's conclusions are as reasonable as any other contrary conclusions and are not disturbed. Rosell, supra.

DECREE
The judgment of the trial court, at plaintiff's cost, is
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, NORRIS, HIGHTOWER, HALLAND and LINDSAY, JJ.
Rehearing denied.