HIGHTOWER, Judge.
In this worker’s compensation suit, an employer and its insurance carrier appeal an award of medical expenses, attorney’s fees, and a “letter of guarantee” for future expenditures. Although it is undisputed that the claimant sustained soft tissue damage to the left foot in a certain job-related accident, the primary issue concerns whether that same mishap also caused a left ankle injury. For reasons expressed herein, we reverse.
FACTS
Plaintiff, Beverly J. Thomas, suffered injury on March 15, 1988, when he dropped a heavy steel plate on his left foot while in the course of his employment with Brown & Root USA, Inc., at an industrial site in DeSoto Parish. Despite some initial pain, plaintiff continued to work until later that day when he reported to the emergency room of the local hospital, where x-rays proved negative for fracture. After instructing the patient to avoid weight on the extremity for the next seven days, the attending physician prescribed ace bandaging, together with elevation of the appendage and application of ice to the swollen area. Thomas nonetheless returned to light work the following day and resumed regular activities a few days thereafter.
On March 21, complaining of persistent foot pain, plaintiff visited Dr. Leigh Dillard, a general practitioner, whom he continued to see periodically for nearly a full year, except one five-month cessation. Finally, on March 2, 1989, Dr. Dillard released him to return to work as concerned the foot injury. Meanwhile, in a second on-the-job accident, Thomas fell from a ladder on December 5, 1988. That incident resulted in a fractured vertebra, requiring the assistance of an orthopedic surgeon, Dr. William Bundrick.[1] Several weeks later, on April 10, 1989, for the first time, this physician began additionally tending to complaints in the left ankle.
This curious expansion of plaintiff’s symptoms, coupled with a subsequent investigation, caused the employer’s compen *280 sation carrier to decide that the ankle injury had not occurred in the course of employment, and especially not during the March 15 incident. When the insurer refused to pay for further treatment of the ankle, including reconstructive ligament surgery suggested by Dr. Bundrick, and subsequent to rejection of the worker’s compensation office recommendation that excluded such care, plaintiff instituted suit. After initially seeking past and future medical expenses, statutory penalties, and attorney’s fees, all in connection with the March occurrence, Thomas later attempted by amendment to assert the second on-the-job accident as an alternative cause of his ankle abnormality. However, in response to that pleading, the trial court sustained an unopposed exception of prematurity, noting that any dispute emanating from the December mishap had not been submitted for informal resolution, as then mandated by LSA-R.S. 23:1311, 1314.
Following trial on the merits, the lower court found the ankle injury precipitated by the March 15 incident and awarded the unpaid past medical expenses. Also, determining that the employer acted arbitrarily and capriciously in failing to satisfy such treatment costs, the trial judge granted plaintiff $3,000 in attorney’s fees. Then, through supplemental written reasons rendered more than two weeks after its first decision, the court additionally ordered the issuance of a “letter of guarantee” for payment of future medical expenses. This appeal, by the employer and its insurer, ensued. Appellee answered, requesting additional attorney’s fees.
DISCUSSION
As stated, no question exists that an on-the-job foot injury transpired on March 15, 1988; nor is there any dispute that plaintiff currently experiences ligament instability in the left ankle. Instead, the basic issue concerns whether that condition resulted from the March 1988 accident.[2]
The furnishing of necessary medical care, establishing a debt between a care provider and a worker’s compensation claimant, entitles the employee to seek recovery for those expenses. See LSA-R.S. 23:1203(A). Of course, plaintiff bears the burden of demonstrating by a preponderance of the evidence that such treatments are causally related to the on-the-job accident and necessary. Sewell v. Argonaut Southwest Ins. Co., 362 So.2d 758 (La.1978); Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App.2d Cir.1991); Barry v. Western Elec. Co., Inc., 485 So.2d 83 (La.App.2d Cir.1986), writ denied, 487 So.2d 441 (La.1986); Charles v. Aetna Cas. and Surety Co., 525 So.2d 1272 (La.App. 3d Cir.1988), writ denied, 531 So.2d 480 (La.1988).
In determining such cases, the factual findings of a trial court are entitled to great weight, and reasonable credibility evaluations and inferences of fact will not be disturbed unless clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989); Green v. Jackson Rapid Delivery Service, 506 So.2d 1345 (La.App.2d Cir.1987).
At trial, plaintiff stated that, on the date of the accident, in attempting to extricate his foot from beneath the steel plate, a twisting movement caused a “popping” in the ankle joint. He indeed indicated that he experienced “some” injuries at the top of his foot, “but not like in my ankle.” According to his testimony, although subsequent occurrences distorted or sprained the ankle, no other event produced the initial condition. Furthermore, he specifically denied that the December 5, 1988 accident involved his ankle.
On the other hand, Dr. Dillard testified quite emphatically that the March accident did not involve the ankle and that, during almost a year of treatment, he discovered no evidence of instability in that area. Instead, he asserted that multiple examinations revealed a crushing-type injury to the mid-foot. At no time, according to the *281 doctor, did plaintiff complain of an ankle injury.
During the first office visit, Dr. Dillard discovered a deep, soft tissue bruise with considerable discoloration about the toes, heel and dorsum of the foot. In his deposition, he termed the symptoms displayed by plaintiff as “not uncommon” for such an injury. As the doctor also explained, the fact that swelling may well have extended into the ankle region did not indicate an injury involving that area:
[TJhere was no injury, from my examination, to the ankle. The swelling extended fairly markedly, as all foot injuries do, and may well have involved this space in here under and around the ankle area. There’s a difference between where is the primary injury and what is swollen. If I break your arm in the middle, right here, just below the elbow, and you hold your arm down, by the next day, your hand will be swollen, but your hand is not hurt.... I was simply trying to reflect ... where the swelling had spread to.... But the primary injury I never felt was anything but a crush injury to the dorsum or mid foot.
Plaintiff first complained of an ankle abnormality to Dr. Bundrick, on April 10, 1989, several weeks after being released by Dr. Dillard, and nearly thirteen months subsequent to the original foot injury. Discovering tenderness over the lateral or outer aspect of the ankle with moderate ligament laxity, the orthopedist suggested strengthening exercises. Evaluation during a third visit, on August 14, 1989, disclosed mild swelling. Finally, about five weeks later, after the patient described the joint twisting and “giving way,” the physician recommended surgical reconstruction of the ligament structure. At that time, based on the history imparted by plaintiff, Dr. Bundrick related the ankle difficulty to the March 1988 accident.
As previously noted, Dr. Bundrick began treating plaintiffs back injury on December 28, 1988. From that date until April 10, 1989, according to the physician, Thomas never complained of any ankle injury; nor did the doctor’s notes, or recall, suggest any observations of limping or foot problems during that period. Indeed, ultimately, after receiving Dr. Dillard’s reports and records, Dr. Bundrick stated that more probably than not a connection between the ligament instability and the March 1988 accident did not exist.
Dr. Robert Holladay, IV, likewise a specialist in orthopedic surgery, also testified. On June 25, 1990, he performed an examination at the request of plaintiff’s attorney. At that time, Thomas reported that he hurt his ankle when he fell from the ladder on December 5, 1988.[3] Based on that history, the orthopedist related the injury to that event. That historical account further failed to mention any twisting of the joint during efforts to extricate the foot. After considering the depositions of both treating physicians, Dr. Holladay testified he had no reason to dispute a conclusion that the March 15 incident did not cause the ankle injury.
In its reasons for judgment, the trial court expressly, and with heavy reliance thereon, stated that Dr. Dillard “admits not having specifically examined plaintiffs’ (sic) ankle.” However, despite repeated readings of the physician’s deposition, we have failed to discover that admission. Moreover, to otherwise accept such a proposition — that an examination of the ankle never occurred even during the extended treatment involved — would in our view run counter to reason and require subscribing to that which is highly improbable. Furthermore, we can find no other explanation for the trial court’s decision to essentially ignore the very emphatic statements of Dr. Dillard, the initial treating physician, that the March injury did not involve the ankle.
Paralleling the medical testimony of the three physicians, then, discloses that: (1) Dr. Dillard testified that the March 15 incident did not cause the ankle injury; (2) Dr. Bundrick ultimately concluded that more *282 probably than not the joint abnormality did not result from that occurrence; and (3) Dr. Holladay, after reviewing the records and depositions of the other two doctors, found no basis to dispute a conclusion that the March accident did not cause the ankle injury. Appellee’s contentions are further undermined by other portions of the record, including a surveillance report within the insurer’s file, which plaintiff introduced.
Nor do we deem plaintiff favored by a presumption of causal nexus inasmuch as the complaints to his physicians commenced over one year after the alleged precipitating event. Cf. Dunn v. Allen Pulpwood, 565 So.2d 516 (La.App.2d Cir.1990). Instead, the medical testimony from three physicians, combined with the other factors indicated, largely rebut the claimant’s version of causation. Thus, it is obvious that plaintiff failed to meet his burden of proving by a preponderance that the March 1988 incident caused his ankle injury. And, in finding otherwise, the trial court clearly erred. Consequently, we reverse that determination and resulting judgment.
Finally, appellants also challenge the attorney’s fee award and the trial court order for issuance of a “guarantee of payment.” Of course, in view of our decision regarding the award of medical expenses, we find it unnecessary to discuss these two additional issues.
CONCLUSION
For the reasons expressed herein, the district court judgment is reversed at ap-pellee’s cost.
REVERSED.

. The record indicates that, after the back injury, plaintiff discontinued working.

. In that it is not presently before us, we do not address whether the ankle injury resulted from the December 5, 1988 incident.

. Interestingly, these disclosures occurred about two months subsequent to a contention by plaintiff that attorney error led to an allegation, in a separate lawsuit, that a "severe sprain of the left ankle and foot” resulted from the December occurrence.