637 So.2d 571 (1994)
Hershel W. ANDREWS, Plaintiff-Appellant,
v.
MUSIC MOUNTAIN WATER COMPANY, Defendant-Appellee.
No. 25634-CA.
Court of Appeal of Louisiana, Second Circuit.
April 6, 1994.
Writ Denied June 24, 1994.
*572 Gahaghan & Wilson, by: Donald R. Wilson, Jena, for plaintiff-appellant.
Allen & Coch, by: James H. Gibson, Lafayette, for defendant-appellee.
Before VICTORY, STEWART, JJ., and PRICE, Ad Hoc, J.
STEWART, Judge.
Hershell Andrews appeals the decision of the workers' compensation hearing officer denying his claim for workers' compensation benefits. He contends that he suffered disability to his back as a result of a job-related accident. For the reasons assigned below, we affirm.

BACKGROUND
In 1990, Hershell Andrews began working for Music Mountain Water Company ("Music Mountain") selling and installing water dispensers and bottled water. At the time of the accident, Andrews was 60 years old and had a history of chronic back problems.
On May 14, 1990, Andrews called upon the home of Mr. and Mrs. Owens in Bastrop, Louisiana. After installing a water dispenser in their home, he noticed a leak and attempted to move both the dispenser and water bottle outside on the patio. Together, the dispenser and water bottle weighed over a hundred pounds. While making this attempt to move the bottle and dispenser, Andrews alleged that he felt an intense burning pain in his neck and arm. Andrews testified that it was a pain that he had never experienced before. Upon returning to the company headquarters in Monroe, Andrews reported his injury to Carl Parker, his supervisor. He testified that he visited Dr. Douglas Liles, an orthopedist in Monroe, a few days after the accident. However, Dr. Liles, who had treated plaintiff for neck and shoulder problems in the fall of 1989 before he began working for Music Mountain, denied such a visit. Andrews took a few days off after the accident, but the pain continued. Andrews continued to work through August 1990, when he finally resigned because of the pain.
According to Dr. Liles, Andrews exhibited symptoms on October 2, 1990 similar to those noted in October 1989. Dr. Liles felt that Andrews had a cervical disc problem and therefore he referred Andrews to Dr. Don Irby, a neurosurgeon. After a series of tests, Dr. Irby felt Andrews suffered from protruding cervical discs at C5-6, C6-7, and C7-T1. Dr. Irby performed a cervical discectomy on the C5-6 and C6-7 discs and a bilateral foranimatory in December 1990. Andrews recovered poorly from the surgery.
Andrews filed a claim for workers' compensation against Music Mountain and Zurich American Insurance Company ("Zurich"), Music Mountain's workers' compensation carrier. Zurich rejected the claim. Andrews then filed a claim with the Louisiana Office of Workers' Compensation in January of 1991.

TRIAL COURT JUDGMENT
Trial on the merits was conducted in late January of 1992. At trial, the issue was whether Andrews had suffered a work-related injury. On December 14, 1992, the hearing officer issued a judgment rejecting Andrews' claim. In its reasons for judgment, the hearing officer summarized the depositions of the doctors detailing Andrews' long history of degenerative back disease. This extensive history of degenerative back disease apparently weighed heavily in the hearing officer's decision to reject Andrews' claim for workers' compensation benefits. Because sufficient evidence exists in the record to support the hearing officer's finding that the degenerative back disease was the source of Andrews' disability, the judgment of the hearing officer is affirmed.

*573 ASSIGNMENTS OF ERROR
Andrews contends that the hearing officer erred in not applying a legal presumption that the accident on May 14, 1990 caused his disability. While admitting that he had a pre-existing back problem, he argues that a pre-existing condition or disease does not disqualify him from claiming the benefits of this presumption, if the work related injury aggravated, accelerated, or combined with the disease to produce the disability for which compensation is sought. Music Mountain counter-argues that Andrews is not entitled to the presumption of causation because he did not prove that there was a reasonable possibility of a connection between the accident and his disability. It argues that Andrews' disability is the result of gradual deterioration in his back and that this type of injury is specifically excluded from coverage under the workers' compensation laws.
Music Mountain also contends that the hearing officer's judgment should not be disturbed in the absence of manifest error. It argues that the hearing officer had a reasonable basis from which to believe that the accident was not the cause of Andrews' disability because (1) there was a large gap of time between the occurrence of the accident and the filing of the accident report, (2) Andrews' pre-existing degenerative back disease caused his disability, (3) Andrews did not tell his treating physician, Dr. Liles, about the accident, and (4) Andrews did not file a written report of the accident until almost five months after the accident occurred.

LEGAL PRECEPTS
An employer shall pay compensation if an employee receives a personal injury by accident arising out of and in the course of his employment. LSA-R.S. 23:1031(A). An accident is "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." LSA-R.S. 23:1021(1). A claimant in a workers' compensation case has the burden of establishing his disability and its causal relation with the employment accident by a preponderance of the evidence. Lubom v. L.J. Earnest Inc., 579 So.2d 1174, 1178 (La.App.2d Cir.1991). Proof by a preponderance of the evidence is sufficient when the evidence taken as a whole, shows that the fact sought to be proved is more probable than not. In order for the employee to recover, it must be determined that his employment somehow caused or contributed to his disability, but it is not necessary that the exact cause be found. Id. at 1179; Dunn v. Allen Pulpwood, 565 So.2d 516, 520 (La.App.2d Cir.1990).
A claimant's disability is presumed to have resulted from an accident if before the accident he was in good health, but commencing with the accident the symptoms of the disabling conditions appear and continuously thereafter manifest themselves, providing either that there is sufficient medical evidence to show there is a reasonable possibility of causal connection between the accident and the disabling condition or that the nature of the accident, when combined with other facts of the case raises a natural inference though human experience that such a causal connection exists. Lubom, 579 So.2d at 1179.
An employee's preexisting disease or infirmity does not disqualify his workers' compensation claim if the work-related injury either aggravated, or combined with, the disease or infirmity to produce the disability for which compensation is claimed. When a claimant proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, a claimant's work injury is presumed to have aggravated, accelerated, or combined with any preexisting disease or infirmity to produce his disability. Walton v. Normandy Village Homes Association Inc., 475 So.2d 320, 324-25 (La.1985).
Once a claimant establishes the prerequisites to apply the presumption of causal *574 relationship, the employer has the burden of producing evidence to persuade the hearing officer it is more probable than not that the work injury of which the employee complains did not result from the accident or did not accelerate, aggravate, or combine with the preexisting disease or condition to produce the disability. Lubom, 579 So.2d at 1179; Dunn, 565 So.2d at 716; Walton, 475 So.2d at 325.
Whether the claimant of workers' compensation has carried his burden of proof is a question of fact. Lubom, supra 579 So.2d at 1179. A reviewing court may not set aside a hearing officer's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State through DOTD, 617 So.2d 880, 882 (La.1993).

DISCUSSION
Andrews testified that at no time did any of the problems with his back interfere with his ability to do his job while he was working for Music Mountain nor did it interfere with any of the jobs that he had before he started working for Music Mountain. This testimony was corroborated by Scott Morvant. Morvant, who worked side by side with Andrews during the early part of 1980, testified that he could not remember anytime that Andrews wasn't able to perform his duties at Music Mountain. Andrews' testimony was also confirmed by Russell Wren. Wren testified that although Andrews was having some trouble meeting the sales quota, he was doing an adequate job.
Andrews testified that it was only after the accident on May 14, 1990 that he started to suffer from pains in his arm, shoulder, and cervix which prevented him from lifting the water bottles and water dispensers. Morvant confirmed that after the accident Andrews could no longer lift any of the water bottles. He also testified that he even tried to rig a sling for Andrews to help him drive his truck. This undisputed and corroborated testimony establishes that before the accident he was in sufficiently good health to perform his job and that after the accident, he was unable to perform his duties. Plaintiff's burden of proving causation was aided by the presumption described in Walton, supra. See Lubom, 579 So.2d at 1179. The remaining factor in proving disability is whether the medical evidence established a reasonable possibility of a causal connection between the accident and activation of the disabling condition. Walton, supra 475 So.2d at 325. Lubom, supra 579 So.2d at 1179.
Andrews has an extensive history of degenerative disc disease in his cervix. In 1983, Andrews visited Dr. Alan Burshell, an endocrinologist, because of chest pains, spasms in his cervix, and a grinding in his neck. Andrews told Dr. Burshell that he had had pains like these for years. After performing several tests, Dr. Burshell concluded that Andrews suffered from degenerative disc disease in cervix discs C5-6 and C6-7. This is the same location that Dr. Irby found the protruding disc.
In August 1989, Andrews visited Dr. J. Scott Caldwell, a chiropractor, for pains in his right shoulder and neck and for stiffness in his back. After conducting several tests, Dr. Caldwell also diagnosed degenerative disc disease in Andrews' C5-6 and C6-7 cervical discs. Despite the diagnosis, Dr. Caldwell concluded that pain in Andrews' shoulder was being caused by trigger points behind his shoulder such as calcified bursitis. He thought that the degenerative disc disease was only causing the stiffness in his back.
In October 1989, Andrews went to Dr. Liles for the first time for pains in his shoulder and upper arm area. He also complained of pain in his arm down to two fingers. Dr. Liles testified that Andrews told him that he had injured himself while lifting a water bottle; however, he denied having a sudden and violent episode such as falling down a flight of stairs or getting hit by a car. Dr Liles performed several tests, and like the two previous doctors, he found degenerative disc disease in the C5-6 and C6-7 discs in his cervix. Initially, Doctor Liles diagnosed the cause of Andrews' pain as a protrusion of the C6-7 disc. However, after a return visit he found that most of Andrews' pain was caused by calcified bursitis in his shoulder. When Andrews went to see Dr. Liles after the accident in 1990, Dr. Liles *575 again performed tests on Andrews' back and found disc protrusions. He thought that the disc protrusions were the result of gradual deterioration or a progressive deterioration of Andrews' degenerative disc disease.
Dr. Irby testified that based on the tests he performed and upon his review of all the notes and tests that Dr. Liles had performed including those in 1989, the accident caused Andrews' disc disease to become symptomatic and made the C7-T1 problem symptomatic. Dr. Thomas Peronne, a neurologist, performed an independent medical examination of Andrews in 1992. He also reviewed the operative notes of Dr. Irby. He testified that Andrews' disability was caused by "mostly bony narrowing and bony ridges that resulted in the nerve root compression which Doctor Irby operated on." He stated that this is not "something that happens acutely from an injury, but is something that takes years to develop." However, Dr. Peronne admitted that in making this diagnosis he didn't have any of Andrews' medical records, X-rays, or any other test results. He also admitted that if he had had the records, then he would have a better idea of whether Andrews had suffered a soft disc herniation as opposed to bony protrusions.
Viewing the record as a whole, the evidence presented at trial supports the findings of the hearing officer that Andrews did not suffer a work-related injury. In essence, the hearing officer had to choose between two possible causes of Andrews' disability. One possible cause of the disability was the accident that occurred on May 14, 1990. Dr. Irby's testimony supports this conclusion. Another possible cause of the disc protrusion is the degenerative disc disease that eventually caused symptomatic pain. The testimony of Dr. Peronne and Dr. Liles and Andrews medical history support a finding that the degenerative disc disease caused Andrews' disability. The hearing officer relied more on the testimony and evidence as a whole, than on the opinion of Dr. Irby that Andrews' disability was caused by the May 14, 1990 accident. Although Dr. Irby's testimony was very cogent, we cannot say that the hearing officer was clearly wrong in adopting a different permissible view of the evidence. Stobart, supra.
Andrews strenuously argues that his disability was caused by his attempt to move a heavy water bottle and dispenser simultaneously. However, like the hearing officer, we cannot ignore his long history of degenerative disc disease in the very area of his back where he suffered the disc protrusion. We also cannot ignore the fact that Andrews' had previously complained of pain in the same area of his cervix where the disk protrusions were located. To ignore this evidence that his back problems could have been caused by the degenerative back disease as well as his attempt to move the water bottle and dispenser, would force us to substitute our own factual evaluations for the evaluations of the hearing officer and this is exactly what we cannot do. See Stobart, supra. We therefore hold that there was sufficient evidence in the record for the hearing officer to conclude either that Andrews had not established a reasonable possibility that the accident and his disability were causally related or that Music Mountain had rebutted the presumption that the accident and disability were causally related.

CONCLUSION
Because there is sufficient evidence in the record for the hearing officer to find that Andrews had not suffered a work-related injury, we affirm the judgment below. Costs are assessed against Andrews.
AFFIRMED.