hGOTHARD, Judge.
Claimant, J.T. Collins, appeals a judgment rendered by a hearing officer in the Workers’ Compensation Administration granting defendant’s motion for summary judgment. Claimant filed a disputed claim for workers’ compensation on January 8, 1992, asserting that he injured his back while lifting a cylinder in the course and scope of his employment with defendant, Browning-Ferris, Inc. (BFI).
On May 20, 1992, after taking the deposition of, and reviewing a medical report received from a treating physician, Dr. Pierre Espenan, defendant filed a motion for summary judgment. ' The motion asserted that the injuries sustained by the claimant were the result of an automobile accident which occurred about one week after the work acci *772 dent and, therefore, not compensable. After a hearing on the motion on October 2, 1992, the hearing officer took the matter under advisement. On December 15, 1992 the officer rendered judgment, accompanied by written reasons, in favor of defendant.
hThe matter was placed on the docket of this Court and set for oral argument on October 6, 1993. However, because this Court was notified that the court reporter was unable to find the transcript, the matter was removed from the docket by order of this Court dated, September 17, 1993. On July 13,1994, the defendant filed a motion to reset the matter on the docket. The claimant has indicated to this Court that he is in agreement with that request. Consequently, the matter has been reset, although this Court is still without the transcript of the hearing on the Motion for Summary Judgment.
According to the claim form contained in the record, on February 23, 1991, the claimant was:
“inside the body of a truck working on a cylinder by himself. He strained to pick up a tool while holding a cylinder to prevent it from falling on him. He then felt a pull in his back.”
It is clear from the reasons for judgment that the trial court found that, an automobile accident in which claimant was injured on February 27, 1991, and" not the work related accident, was the cause of claimant’s disc herniation and resulting disability. It is also clear that the officer relied solely on the deposition of Dr. Pierre Espenan to support that finding.
In that deposition Dr. Espenan states that he had treated the claimant for an infected tooth about one month prior to the accident. Dr. Espenan consulted Dr. Jesse Penico and arraigned for Dr. Penico to hospitalize the claimant for a diagnostic workup because of the lingering infection. On February 26, 1991 the claimant went to see Dr. Penico for that purpose. Because the claimant related the history of the work related back injury to Dr. Penico at that time, Dr. Penico suggested that claimant be examined immediately by Dr. Espenan.
UDr. Espenan saw claimant the same day and felt that he would be disabled for another four to five days due to the back injury. The claimant related to the doctor that he hurt his back at work, but that the first symptom became manifest shortly after completion of the job, and was not reported to his supervisor at BFI.
During that examination on the 26th' of February, Dr. Espenan found a serious back musculoligamentous strain. The claimant had severe restriction of motion in his lumbo-sacral area. He had more spasm demonstrated in the left side than on the right side. Dr. Espenan explained that the patient had no radiation of serious discomfort into either extremity. He had a negative straight leg raising test. The deep tendon reflexes were active and equal and the patient did not exhibit any loss of sensation in either lower extremity. X-rays taken at that time indicated a defect in the pars interarticularis of L5, which is a congenital defect, with no slippage. Dr. Espenan testified that the injury was not a direct trauma. Because there were no neurological changes, Dr. Espenan recommended conservative treatment.
When asked whether the symptoms exhibited by claimant at that time were indicative of a disc herniation, Dr. Espenan responded:
“I couldn’t be certain at that time. I felt that it was just a low back strain, and I certainly was not ... I did not make the diagnosis of a ruptured disc.”
He also stated that he felt that, in the claimant’s case the disc herniation happened, “not acutely, it happened subsequently”. He opined that, based on his examination of claimant on the 26th, he sustained a musculo-ligamentous strain of the back. He did not feel that the claimant sustained a herniated disc.
The claimant returned the next day to see Dr. Espenan. However, because Dr. Espen-an was out of town, the claimant saw another physician in Dr. |sEspenan’s office. The claimant related that he had been in an automobile accident and had “wrenched” his back. Reading the chart prepared by his associate, Dr. Espenan stated that this injury was more severe than the previous back inju *773 ry. There was an immediate onset of pain with symptoms which indicated he had sustained a disc herniation.
Dr. Espenan saw the claimant again on March 5, 1991. At that time the claimant’s condition had worsened. He was having more difficulty with the low back, suggesting a more severe problem than first indicated. Dr. Espenan testified that he conducted some additional tests and consulted Dr. Mi-meles. The testimony does not give Dr. Mimeles’ full name, his area of expertise, or the extent of his treatment of claimant, but it appears from memoranda contained in the record that Dr. Mimeles performed a lami-nectomy on the claimant.
Dr. Espenan stated that, in his opinion, surgery was necessary because the claimant was not responding to conservative treatment, and had a large disc fragment that was evident on the MRI.
When asked directly if he was able to say which accident caused the disc herniation, Dr. Espenan responded:
“I don’t know — I didn’t go into the ergonomics, the type of accident that he had in the automobile. So I — all I can say is that he got worse after that accident than when he was before the accident. The fact that he was sitting in the front seat of the car and got wrenched, that — you know, I don’t know how serious that could have been, but the fact that he got worse shortly after that accident, it made me suspicious of that being more of a cause than the accident that he had at work.”
Compensation is due to an employee if that employee receives a personal injury by accident arising out of and in the course of his employment. LSA-R.S. 23:1031(A). An accident is defined by LSA-R.S. 23:1021(1) as:
16“an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.”
Further, a claimant in a workers’ compensation case has the burden of establishing his disability and its causal relation with the employment accident by a preponderance of the evidence. Lubom v. L.J. Earnest Inc., 579 So.2d 1174, 1178 (La.App. 2 Cir.1991); Andrews v. Music Mountain Water Co., 637 So.2d 571 (La.App. 2 Cir.1994), writ denied, 640 So.2d 1356 (La.1994). Proof by a preponderance of the evidence is sufficient when the evidence taken as a whole, shows that the fact sought to be proved is more probable than not. In order for the employee to recover, it must be determined that his employment somehow caused or contributed to his disability, but it is not necessary that the exact cause be found. Id. at 1179; Dunn v. Allen Pulpwood, 565 So.2d 516, 520 (La.App. 2 Cir.1990); Andrews v. Music Mountain Water Co., supra 637 So.2d at 573.
The claimant’s disability is presumed to have resulted from an accident, if before the accident he was in good health, but began having symptoms of disabling conditions with the occurrence of the accident, and continuing thereafter. That presumption applies, provided there is sufficient medical evidence to show that there is a reasonable possibility of causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with other facts of the case, raises a natural inference through human experience that such a causal connection exists. Lubom v. L.J. Earnest Inc., supra 579 So.2d at 1179; Andrews v. Music Mountain Water Co., supra 637 So.2d at 573.
17Once a claimant establishes the prerequisites to apply the presumption of causal relationship, the employer has the burden of producing evidence to persuade the hearing officer it is more probable than not that the work injury of which the employee complains did not result from the accident. Lubom v. L.J. Earnest Inc., supra 579 So.2d at 1179; Dunn v. Allen Pulpwood, supra 565 So.2d at 716; Andrews v. Music Mountain Water Co., supra 637 So.2d at 573-74.
LSA-C.C.P. art. 966 provides that a summary judgment will only be granted if:
“the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *774 there is no genuine issue as to material facts, and that mover is entitled to judgment as a matter of law.”
The duty of the appellate court is to determine whether the supporting documents presented to the trial court were sufficient to resolve all material factual issues. Davis v. Oilfield Scrap & Equipment Co., 482 So.2d 970 (La.App. 3 Cir.1986); Allen v. City Wholesale Liquor Co., 563 So.2d 1213 (La.App. 4 Cir.1990), writ denied, 569 So.2d 962 (La.1990).
The record contains testimony from only one of the treating physicians. There is no evidence of the opinion as to the causation of the injury by the physician who actually performed the surgery. We find that the evidence in the record of this case is insufficient to be decisive of the material issue of causation. Consequently, we find the matter was inappropriately decided on a motion for summary judgment. We reverse the hearing officer’s judgment and remand the matter for a complete hearing on the merits.
REVERSED AND REMANDED.