12CARTER, Judge.
This is an appeal from a judgment of the Office of Worker’s Compensation, dismissing plaintiffs claim for worker’s compensation benefits.

FACTS

On April 22, 1993, Charles C. Smith, Jr., plaintiff, was allegedly injured as a result of a fire occurring during the course and scope of his employment with Grand Isle Shipyard (Grand Isle) while he was welding on an offshore dock. Plaintiff alleges that the injuries he sustained rendered him disabled and unable to engage in any gainful employment for a period of approximately eleven months. Grand Isle paid some of plaintiffs medical expenses, but did not pay him any worker’s compensation benefits.
On January 3, 1994, plaintiff filed with the Office of Worker’s Compensation a disputed claim for compensation, contending that Grand Isle was responsible for payment of certain medical expenses, weekly compensation benefits, and mileage reimbursement.[2]
On October 26, 1994, trial was held. On November 16, 1994, the hearing officer rendered judgment in favor of Grand Isle, dismissing plaintiffs claim with prejudice at his costs. Plaintiff appealed from this adverse judgment, assigning the following specifications of error:
1. The hearing officer erred in applying a higher standard of proof than required by law and in finding that plaintiff was not entitled to worker’s compensation benefits.
2. The hearing officer erred in failing to find Grand Isle arbitrary and capricious and without probable cause in refusing to pay benefits and in failing to award attorney’s fees.

WORKER’S COMPENSATION BENEFITS

The Louisiana Worker’s Compensation Law provides coverage to any employee who suffers “personal injury by accident arising out of and in the course of his employment.” LSA-R.S. 23:1031; Sparks v. Tulane Medical Center Hospital and Clinic, 546 So.2d 138, 139 (La.1989); Benoit v. Maco Manufacturing, 93-0396 (La.App. 1st Cir. 3/11/94), 633 So.2d 1301, 1307. A worker’s compensation claimant has the burden of establishing by preponderance of the evidence that an accident occurred on the job and that he sustained injury. The claimant’s testimony alone may be sufficient to discharge this burden of proof, if no other evidence discredits or casts serious doubt on the claimant’s version of the incident and if the claimant’s testimony is corroborated by circumstances following the incident. Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La. 1992); Borel v. Dynamic Offshore Contractors, 626 So.2d 565, 567 (La.App. 3rd Cir. 1993), writ denied, 93-2993 (La. 1/28/94), 630 So.2d 801. In determining whether the claimant has discharged his burden of proof, the hearing officer should accept as true a witness’s uncontradicted testimony, even though the witness is a party, absent “circumstances casting suspicion on the reliability of this testimony.” Bruno v. Harbert International, Inc., 593 So.2d at 361; Provost v. Transportation Insurance Company, 524 So.2d 800, 802 (La.App. 3rd Cir.1988). A hearing officer’s determinations as to whether a claimant’s testimony is credible and whether he has discharged his burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Bruno v. Harbert International, Inc., 593 So.2d at 361; Andrews v. Music Mountain Water Company, 25,634, p. 5 (La.App. 2nd Cir. 4/6/94), 637 So.2d 571, 574; writ denied, 94-1190 (La. 6/24/94), 640 So.2d 1356.
Attempting to give meaning to the terms “clearly wrong” and “manifest error,” the Louisiana Supreme Court enunciated the fol *417 lowing general principles that govern an appellate court’s power to reverse a trial court’s factual findings:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding 14purportedly based upon a credibility determination. But where such factors are not present, and a factfin-der’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong, [citations omitted].
Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989). See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
The record in the instant case reveals the following testimony and medical evidence:
Plaintiff testified that he had been a welder for twenty-one years and that he had been employed by Grand Isle for seven months. On April 22, 1993, plaintiff and his helper, Thomas Ray, were welding on a dock, which was approximately eight feet in width and eight feet in length, surrounded by canvas on the top and east and west sides and by plywood on the north side. According to plaintiff, Ray noticed smoke behind plaintiff and realized that the canvas tarpaulin was on fire. Ray then left to obtain a fire extinguisher. Plaintiff stated that the fire then erupted into flames, and plaintiff attempted to beat out the fire with his welding gloves. When Ray returned, he emptied the extinguisher onto the flames. However, the fire did not subside. Plaintiff indicated that Ray then left the area, while plaintiff stood there, contemplating how to cross over to the other side in order to turn off the bottles of acetylene and oxygen. Plaintiff, however, did not attempt to cross over the fire; rather, he retreated to the area where Ray was standing.
Plaintiff testified that, as a result of the fire, he inhaled smoke, and the chemical from the extinguisher, sodium carbonate, covered him, getting into his eyes, mouth, and nose. Plaintiff stated that, when the relief crew arrived, he reported the accident and his injuries and filled out an accident report. The crew then extinguished the fire, without plaintiffs assistance. According to plaintiff, only he and Ray witnessed the fire, but people in the oilfield saw the flames.
Plaintiff stated that, after the fire, he did not continue working. He immediately developed a headache, nausea, a cough, and a burning sensation in his throat. On the following morning, plaintiff consulted his brother, Dr. Eddie Smith. On that |ssame morning, plaintiff reported the accident to his employer, specifically Dallas Hebert, indicating that he was seeking medical treatment. Plaintiff continued to consult Dr. Smith and also consulted Dr. J. Michael Ellender. Plaintiff acknowledged that Grand Isle offered him the opportunity to return to work in Grand Isle’s office, answering the telephone. However, plaintiff chose not to return to work in this capacity because he was “sick” and wanted to “rest and stay in bed.”
Thomas Ray testified that he had been employed by Grand Isle for three years. At the time of the fire, Ray was employed as a roustabout and was grinding one of plaintiff’s welds. According to Ray, he suddenly noticed a flame approximately six inches in height coming from the tarpaulin. Ray stated that he went to obtain a fire extinguisher, and, when he returned, he sprayed the flame for a “couple of seconds” until the smoke cleared. However, Ray indicated that the flames increased, so he emptied the extinguisher onto the flames. Ray stated that the entire area then burst into flames, and he retreated to the east side of the structure.
According to Ray, plaintiff was approximately fifteen to twenty feet behind him *418 while he was attempting to extinguish the fire. To his knowledge, none of the chemical from the extinguisher got onto plaintiff, nor could he see how the chemical could have gotten onto plaintiff. Ray explained that the wind was blowing in a northerly direction, and plaintiff was standing upwind from him. According to Ray, the only time that plaintiff was near the fire was in the early stages when the flame was only about six inches in height. About three and one-half hours after the fire, while Ray and plaintiff were waiting at the marina for Ray’s wife to pick him up, he and plaintiff each drank a beer, and Ray did not notice plaintiff to be in any discomfort. According to Ray, he received no injuries from the fire, even though he, unlike plaintiff, actually helped to put out the fire.
On cross-examination, Ray indicated that the extinguisher was located approximately forty feet away, and it took him about thirty seconds to retrieve it. Ray acknowledged that he could not see where plaintiff was while he was obtaining the extinguisher. However, Ray stated that he was certain that smoke was not engulfing the area at that time because, when he returned with the extinguisher, the flame was | ^approximately the same size as when he left. Ray indicated that, to his knowledge, plaintiff did not attempt to extinguish the fire.
On rebuttal, plaintiff testified that, when Ray returned with the extinguisher, the whole east side of the area was engulfed in flames. Plaintiff also indicated that, as the fire grew, he attempted to extinguish it and did not move fifteen to twenty feet behind Ray as Ray indicated. According to plaintiff, the wind was blowing in a southerly direction, and he was standing downwind from the fire. Plaintiff also stated that, at the marina, he drank a coke, not a beer as Ray indicated.
The notes and narrative reports of Dr. Eddie M. Smith, plaintiffs brother and primary physician, indicate that he first saw plaintiff on April 23, 1993. At that time, plaintiff voiced complaints of chest pain, shortness of breath, abdominal pain, nausea, and headaches. Dr. Smith diagnosed plaintiff with sodium carbonate exposure and treated plaintiff with medication. Dr. Smith saw plaintiff again on April 26, 1993, and May 3, 1993, at which time the examinations were “benign.” However, Dr. Smith recommended that plaintiff see Dr. J. Michael El-lender, a pulmonologist. Plaintiff was then referred back to Dr. Smith for symptoms of stomach irritation and headaches. Dr. Smith continued to see plaintiff for symptoms of headaches, coughing, nausea, and weakness.[3] On March 8, 1994, Dr. Smith noted that plaintiffs headaches were milder and less frequent, and his pain was being controlled with Tylenol. At this time, Dr. Smith released plaintiff to return to work.
The medical reports of Dr. J. Michael El-lender, pulmonologist, indicate that he examined plaintiff on May 17,1993, and the examination revealed clear lungs, regular heart rate, normal chest x-rays, and a pulmonary function study produced normal results. On May 26, 1993, Dr. Ellender noted that plaintiff suffered from a smoke inhalation injury with no physical findings other than a cough, which was most likely related to bronchial irritation. On June 16, 1993, plaintiff complained of coughing, mild stomach irritation, and headaches. Dr. Ellender’s examination of plaintiff revealed clear throat and lungs, and 17there was no evidence of rhonchi or wheezing. Dr. Ellender’s impression was that plaintiff had irritant tracheal bronchitis, which seemed to be improving, and headaches, which he could not attribute to smoke inhalation.
The deposition testimony of Dr. William Brooks Emory, an expert in the field of internal medicine, pulmonary medicine, and critical care, indicates that he saw plaintiff on one occasion, August 31, 1994. According to Dr. Emory, plaintiff had no complaints and stated that his symptoms had resolved five months earlier, in March of 1994, and that he was working as a welder for Bollinger Shipyards. Dr. Emory performed chest x-rays and a breathing test on plaintiff, the results of which were normal. According to Dr. *419 Emory, there was no measurable impairment, indicating normal pulmonary function studies.
Dr. Emory testified that he reviewed the records of Drs. Smith and Ellender. Dr. Emory indicated that there was nothing in Dr. Ellender’s records regarding irritation in plaintiffs bronchial tubes or breathing passages due to inhalation of fumes, smoke, or chemicals. According to Dr. Emory, the medical records reveal no indication of wheezing or crackling, which would be indicative of bronchitis or asthma. In fact, Dr. Emory stated that Dr. Ellender’s records show no physical findings of irritant branchiate, but only show a diagnosis based on plaintiffs symptoms. Dr. Emory opined that the fact that Dr. Ellender’s tests showed no signs of irritation in the bronchial tubes or lungs indicates that it is unlikely that plaintiff sustained a stomach injury.
Because plaintiffs problems were resolved by March of 1994, Dr. Emory opined that, if plaintiff had suffered any process of a significant degree, plaintiffs problems would have lasted, at the longest, ten days. Based on his examination of plaintiff and his review of the medical records, Dr. Emory found no objective evidence of injury that plaintiff might have sustained from fumes or from swallowing or inhaling fire extinguisher chemicals.
After hearing all of the testimony and considering all of the evidence, the hearing officer found that plaintiff failed to carry his burden of proof and was, therefore, not entitled to worker’s compensation benefits. In his reasons for judgment, the hearing Isofficer noted that plaintiff’s version of the events surrounding the alleged incident were not corroborated by his fellow employee, who was present at the scene when the alleged incident occurred, or by the medical evidence. The hearing officer determined that the testimony of independent, disinterested witnesses was more credible than that of plaintiff or his physician, who happened to be plaintiffs brother.
We have thoroughly reviewed the entire record in this matter and find that there is a reasonable factual basis for the findings of the hearing officer. The hearing officer heard two different versions of the incident and believed Ray’s version. The hearing officer also considered all of the medical reports and medical testimony and gave more credibility to that of Drs. Ellender and Emory. Although Dr. Smith diagnosed plaintiff with sodium carbonate exposure, there were no objective findings to support such a diagnosis. Dr. Ellender’s diagnosis of irritant tracheal bronchitis was based solely on plaintiffs complaints, as he noted no objective findings other than a cough.[4] Likewise, Dr. Emory found no objective evidence to support plaintiff’s complaints and stated that plaintiff’s complaints were inconsistent with smoke inhalation and/or chemical ingestion. Based on all of the evidence, we cannot say that the hearing officer was clearly wrong in finding that plaintiff failed to prove by a preponderance of the evidence that he suffered a “personal injury by accident arising out of and in the course of his employment.”

PENALTIES AND ATTORNEY’S FEES

Plaintiff contends that the hearing officer erred in failing to find Grand Isle arbitrary and capricious and without probable cause in refusing to pay him worker’s compensation benefits and in failing to award him attorney’s fees.
A refusal to pay worker’s compensation benefits depends primarily on facts known to the employer at the time of its action. The determination of whether the employer is arbitrary, capricious, or without probable cause is a question of fact. Thus, the hearing officer’s refusal to award penalties and attorney’s fees will not be reversed | sunless it is manifestly erroneous. Killen v. Continental Insurance Company, 514 So.2d 711, 715 (La.App. 2nd Cir.1987).
After reviewing- the record in its entirety, we find that the record clearly evidences the existence of a bona-fide dispute regarding whether worker’s compensation benefits were due plaintiff. Therefore, Grand Isle *420 was not arbitrary, capricious, or without probable cause in denying plaintiff worker’s compensation benefits, and the hearing officer’s refusal to award penalties and attorney’s fees in this case is not manifestly erroneous or clearly wrong.

CONCLUSION

For the foregoing reasons, the judgment of the hearing officer is affirmed. Appeal costs are assessed against plaintiff.
AFFIRMED.

. Gray Insurance Company provided worker's compensation coverage for Grand Isle at the time of plaintiff's claim.

. Dr. Smith saw plaintiff on June 15, 1993; July 20, 1993; September 7, 1993; November 9, 1993; and December 28, 1993.

. We note that plaintiff failed to present the deposition or trial testimony of Drs. Smith and Ellender.