|, KOSTELKA, J.
Dime Mortgage Company (“Dime Mortgage”) appeals that portion of the judgment of the Workers’ Compensation Judge (“WCJ”) in favor of Ginger McCraw (“McCraw”)[1]. For the following reasons, we reverse.
Facts
Dime Mortgage hired McCraw in March, 1999 as a full-time computer sys-terns analyst. The job was completely sedentary and did not require any lifting, crawling or climbing, and McCraw was allowed to sit, stand and walk around as needed. On August 11, 1999, while on the job, McCraw slipped and fell from a curb, injuring her lower back. The claim was reported to Dime Mortgage. What followed was McCraw’s series of examinations by various physicians.
McCraw presented to the Orthopaedic Center of Monroe complaining of back pain. Although she was initially examined at the clinic by a Dr. Racca, Dr. Douglas Brown (“Dr.Brown”) was her first treating physician. He recommended McCraw have an MRI and released her from work pending the results of the MRI. Dr. Brown’s October 11,1999 report notes that McCraw was doing much better, although she disputed that finding at trial, and on that date Dr. Brown released McCraw to return to full-duty work, with a reexamination in six weeks. McCraw returned to work at Dime Mortgage, continued to see Dr. Brown with further complaints of low back pain, and was prescribed physical therapy.
UMcCraw commenced physical therapy and continued to see Dr. Brown into 2000. Notably, in January of 2000, Dr. Brown stated that McCraw was not working, but that she was capable of doing “light duty work.” On March 10, 2000, Dr. Brown discharged McCraw from his care stating that she could return to her former employment with Dime Mortgage. However, he referred her to Dr. John Ledbetter for pain management. At this point in time, Dime Mortgage, based on Dr. Brown’s fl- *1114 nal report terminated McCraw’s total temporary disability (“TTD”) benefits.[2]
Following McCraw’s discharge by Dr. Brown, she was evaluated by her choice of neurosurgeon, Dr. Donald Smith (“Dr. Smith”), who did not believe MeCraw was a candidate for any further invasive procedure and did not restrict MeCraw from her work activities.
Next, MeCraw sought treatment from Dr. Myron Bailey (“Dr.Bailey”), another orthopedic surgeon. After his initial evaluation, Dr. Bailey recommended a lumbar MRI. In his October 19, 2000 report, Dr. Bailey then recommended some form of surgical intervention for MeCraw, although he was not convinced that surgery was the proper treatment. This same report restricted MeCraw from heavy or moderately heavy activities, with or without surgery, but did not specifically restrict her from work. In a letter dated December 7, 2000, Dr. Bailey stated it was unlikely that J^McCraw would be able to return to “her normal mean[s] of employment without surgical intervention.”
As a result of Dr. Bailey’s recommendation of surgery, Dime Mortgage sought its own physician, Dr. Carl Goodman (“Dr.Goodman”), to evaluate MeCraw. Dr. Goodman agreed with the previous diagnosis. However, he did not believe that MeCraw was a favorable candidate for surgery, and he recommended restricting MeCraw to light-duty work.
Shortly prior to the commencement of trial on September 11, 2001, Dime Mortgage took Dr. Bailey’s deposition. At that deposition, Dr. Bailey maintained his recommendation for surgery, expressing his hope that it would alleviate McCraw’s pain. Dr. Bailey was questioned regarding McCraw’s work restrictions, and he agreed she was “capable of sedentary type work that doesn’t involve repetitive standing, walking, stooping or bending, ...” When questioned about the December 7th letter in which he stated MeCraw could not return to work, he responded that she could not return because he “assumed that she was sitting most of the day.” Dr. Bailey also stated that MeCraw could perform her former job with Dime Mortgage if she was allowed to sit and stand alternatively throughout the day.
Trial of this matter was held on September 19, 2001. Upon conclusion of the trial, the WCJ, relying upon the opinions of Drs. Brown, Smith and Goodman, determined that the surgery recommended by Dr. Bailey was not reasonable and necessary medical treatment. This finding was not appealed by MeCraw. However, on the issue of TTD benefits, the |4court relied exclusively on Dr. Bailey’s December 7th letter which stated that MeCraw probably could not return to work with Dime Mortgage without surgery. The WCJ awarded MeCraw TTD benefits from December 7, 2000 through September 11, 2001, the date of Dr. Bailey’s deposition wherein he stated that MeCraw could return to her former job as long as she was allowed to sit and stand alternatively throughout the day.
This appeal ensued by Dime Mortgage as to that portion of the judgment awarding MeCraw TTD benefits, as well as penalties and attorney fees related to Dime Mortgage’s nonpayment of said benefits.
DISCUSSION
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appel *1115 late review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551. Under this standard, the reviewing court may reverse only if it finds that no reasonable factual bases exist for those findings which are clearly wrong or manifestly erroneous. Payne v. Lawn Lourd Lawn Service, 35,-491 (La.App.2d Cir.12/05/01), 803 So.2d 321; Wilkerson v. Kansas City Southern Ry., 33,922 (La.App.2d Cir.11/01/00), 772 So.2d 268, writ denied, 2000-3526 (La.02/16/01), 786 So.2d 105. Here, we find that the WCJ manifestly erred.
In the instant case, the WCJ determined that McCraw was entitled to TTD benefits for the period between December 7, 2000 and September 11, 2001. In so ruling, the WCJ noted the following:
On December 7th, 2000, Dr. Bailey found it unlikely that the claimant would be able to return to her normal means of |fiemployment without surgical intervention. His findings can only be considered as a release from work, and therefore, the claimant is entitled to temporary total disability benefits beginning December 7th, 2000. Her entitlement to temporary total disability benefits terminated during the deposition testimony of Dr. Bailey. When questioned about his December 7th opinion, in his September 11th, 2001 deposition, Dr. Bailey clarified his opinion and found that the claimant would be able to perform her job duties if she was allowed to sit and stand alternatively throughout the day. (Emphasis added).
The WCJ continued, stating that at trial, Dime Mortgage had established no restrictions existed to McCraw’s job that would prevent her from sitting and standing as needed. Specifically, the WCJ stated that McCraw “did not refute this testimony, and therefore, she failed to meet her burden of proof that she is unable to perform her job duties by sitting and standing alternatively and as needed.” However, despite these findings, the WCJ went on to award McCraw TTD benefits for the period of December 7, 2001 (the date of Dr. Bailey’s letter) through September 11, 2001 (the date of Dr. Bailey’s deposition wherein he retracted his original opinion regarding McCraw’s ability to perform her job). We determine that such a finding was clearly in error and unsupported by the evidence at trial.
Considering Dr. Bailey’s September 11, 2001 retraction of his original December 7, 2000 statement regarding McCraw’s ability to perform her job with Dime Mortgage, there existed no basis for an award of TTD benefits between those dates. The WCJ specifically noted that Dr. Bailey, at his September 11th deposition, had clarified his position stated in the December 7th letter by testifying that McCraw could have returned to work if allowed to sit and stand alternatively during her workday. Dr. Bailey retracted his statement of December 7th that McCraw was unable to work, Lin essence rendering that opinion virtually nonexistent. Thus, as of December 7, 2000, there was no basis for awarding McCraw TTD benefits.
Moreover, such an award by the WCJ is not within the dictates of La. R.S. 23:1221(l)(c), which requires as follows:
[Compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, not *1116 withstanding the location or availability of any such employment or self-employment. (Emphasis added).
McCraw clearly was not eligible for TTD benefits in light of the fact that every doctor by whom she was treated or examined (i.e., Drs. Brown, Smith, Bailey and Goodman) opined that she was capable of performing some sort of work. McCraw offered no evidence at trial, let alone clear and convincing evidence, that she was “physically unable to engage in any employment .... ” Therefore, in light of the evidence presented at trial, any award of TTD benefits to McCraw by the WCJ was manifestly erroneous pursuant to La. R.S. 23:1221(l)(c).
Finally, Dime Mortgage also argues that the WCJ erred in assessing penalties and attorney fees for its failure to pay McCraw TTD benefits during the period of time in question. Our determination that McCraw was erroneously awarded such benefits by the WCJ clearly serves to negate the award of penalties and attorney fees against Dime Mortgage, making a discussion of that assignment of error unnecessary. Additionally, our |7decision herein pretermits consideration of the remainder of Dime Mortgage’s assignments of error.
So finding, that portion of the judgment of the Office of Workers’ Compensation awarding total temporary disability benefits, penalties and attorney fees to Ginger McCraw is reversed, with costs of the appeal assessed to her.
REVERSED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, PEATROSS, KOSTELKA, and HARRISON, JJ.
Rehearing denied.

. This appeal is before us as a consolidated matter, because McCraw originally filed two claims in the office of Workers’ Compensation which were consolidated during the proceedings below. Although she had two separate claims pending before the WCJ, only the issues set forth in her later Disputed Claim for Compensation are the subject of this appeal.

. At trial, it was stipulated that Dime Mortgage voluntarily paid weekly indemnity benefits from August 11, 1999 through October 11, 1999 and from January 6, 2000 through March 10, 2000.